TJOFLAT, Circuit Judge,
dissenting from the denial of rehearing en banc, in which WILSON, Circuit Judge, joins:
The facts of this case are set forth in detail in the panel’s first opinion. See United States v. Levy, 374 F.3d 1023, 1024-29 (11th Cir.2004). Pursuant to a written plea agreement, defendant Raphael Levy pled guilty to conspiracy to commit mail fraud and conspiracy to commit money laundering. The district court sentenced Levy to 120 months on the mail fraud charge and 48 months on the, money laundering charge, with the sentences to be served consecutively, for a total sentence of 168 months. The sentence included a two-level vulnerable victim enhance *1336 ment and a fonr-level role-in-the-offense enhancement. On June 23, 2004, the panel affirmed Levy’s sentences, rejecting his claims that the Government breached his plea agreement and that the district court had deprived him of due process by allowing certain witnesses to testify at his sentencing hearing. The next day, the United States Supreme Court held that
the “statutory maximum” for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. In other words, the relevant “statutory maximum” is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings.
Blakely v. Washington, — U.S.-, 124 S.Ct. 2531, 2537, 159 L.Ed.2d 403 (2004) (citations omitted).[1] Although the Court formally “expressed] no opinion on” the constitutionality of the Federal Sentencing Guidelines, id. at 2538 n. 9, the decision has, at a minimum, “cast a long shadow over [them].” United States v. Booker, 375 F.3d 508, 510 (7th Cir.2004), cert. granted,-— U.S. -, 125 S.Ct. 11, 159 L.Ed.2d 838 (2004) (No. 04-104). Indeed, the Court has since granted certiorari and heard oral arguments on precisely this issue. Id.; United States v. Fanfan, — U.S. -, 125 S.Ct. 12, 159 L.Ed.2d 838 (2004) (No. 04-105).
Following Blakely — and before his conviction had become final — Levy filed a petition for rehearing in which he argued for the first time that under Blakely he had a Sixth Amendment right to a jury trial on his federal sentencing enhancements. United States v. Levy, 379 F.3d 1241, 1241-42 (11th Cir.2004). That this was the first time that Levy had advanced such a claim is certainly understandable given that this court unequivocally rejected the same argument in United States v. Sanchez, 269 F.3d 1250, 1262 (11th Cir.2001). Nevertheless, the panel refused to “entertain this new issue because Levy did not timely raise it in his initial brief on appeal.” Levy, 379 F.3d at 1242.[2]
The panel’s decision in this case is problematic for four reasons. First, it unjustifiably limits the principle of Griffith v. Kentucky, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), that “a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases ... pending on direct review or not yet final.” Id. at 328, 107 S.Ct. at 716 (emphasis added). Second, by erroneously terming Levy’s failure to raise a Blakely-type claim in his opening brief a “waiver” rather than a mere “forfeiture,” the decision unduly limits our scope of review under Federal Rule of Criminal Procedure 52(b), as interpreted by the Supreme Court in United States v. Olano, 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). Third, it continues a circuit split that finds this *1337 court standing alone.[3] Fourth, it sends a clear message to appellate counsel that they should brief every colorable claim— even those claims that are squarely foreclosed by our own precedent — or else risk costing their clients the benefit of a favorable intervening decision.[4] As a result, counsel will be tempted to be less discriminating in selecting issues to be argued on appeal, and briefs will necessarily be less specific and clear, which will in turn significantly hinder the fair and efficient administration of justice in this circuit. For these reasons, I dissent from the denial of rehearing en banc.
I.
In Griffith, the Supreme Court held that “a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases ... pending on direct review or not yet final.” 479 U.S. at 328, 107 S.Ct. at 716 (emphasis added). A case is “final” and thus outside the scope of Griffith only when “a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for cer-tiorari finally denied.” Id. at 321 n. 6, 107 S.Ct. at 712 n. 6. Any failure to adhere to this clear rule “violates basic norms of constitutional adjudication” for two reasons:
First, it is a settled principle that this Court adjudicates only “cases” and “controversies.” Unlike a legislature, we do not promulgate new rules of constitutional criminal procedure on a broad basis. Rather, the nature of judicial review requires that we adjudicate specific cases, and each case usually becomes the vehicle for announcement of a new rule. But after we have decided a new rule in the case selected, the integrity of judicial review requires that we apply that rule to all similar cases pending on direct review.
Second, selective application of new rules violates the principle of treating similarly situated defendants the same.... [T]he problem with not applying new rules to cases pending on direct review is “the actual inequity that results when the Court chooses which of many similarly situated defendants should be the chance beneficiary” of a new rule.
Id. at 322-23, 107 S.Ct. at 713 (quoting United States v. Johnson, 457 U.S. 537, 556 n. 16, 102 S.Ct. 2579, 2590 n. 16, 73 L.Ed.2d 202 (1982)). The Court further noted that because it cannot, “[a]s a prac *1338 tical matter, ... hear each case pending on direct review and apply the new rule,” it “fulfillfs] [its] judicial responsibility by instructing the lower courts to apply the new rule retroactively to cases not yet final.” Griffith, 479 U.S. at 323, 107 S.Ct. at 713.
Applying this rule in criminal cases, the Court has never drawn distinctions among defendants on any basis other than the finality of their convictions.[5] In Griffith, for example, the Court discarded the “clear break” exception to retroactivity because it concluded that the fact that a decision is a clear break with precedent simply “has no bearing on the ‘actual inequity that results’ when only one of many similarly situated defendants receives the benefit of the new rule” or on the principle that a court must “not disregard current law[] when it adjudicates a case pending before it on direct review.” Id. at 326-27, 107 S.Ct. at 715-16 (quoting Johnson, 451 U.S. at 556 n. 16, 102 S.Ct. at 2591 n. 16). Likewise, in this case, it is difficult to see how the fact that Levy’s brief omitted a claim that was then squarely foreclosed by our own precedent either mitigates the “actual inequity that results” from distinguishing between Levy and a similarly situated defendant who did raise the issue (perhaps only because his lawyer had not even read Sanchez) or justifies our disregarding the law as it now stands.
The only distinction the Court has made for purposes of retroactivity in criminal cases is between direct and collateral re-' view: “[ujnless they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to those eases which have become final before the new rules are announced.” Teague v. Lane, 489 U.S. 288, 310, 109 S.Ct. 1060, 1075, 103 L.Ed.2d 334 (1989). This distinction is not simply one of convenience, but rather derives from the very function and purpose of federal habe-as corpus:
[T]he threat of habeas corpus serves as a necessary additional incentive for trial and appellate courts throughout the land to conduct their proceedings in a manner consistent with established constitutional standards. In order to perform this deterrence function, ... the habeas court need only apply the constitutional standards that prevailed at the time the original proceedings took place.
Id. at 306, 109 S.Ct. at 1073 (quoting Desist v. United States, 394 U.S. 244, 262-63, 89 S.Ct. 1030, 1041, 22 L.Ed.2d 248 (1969) (Harlan, J., dissenting)). Thus, because habeas does not exist simply to serve some “perceived need to assure that an individual accused of a crime is afforded a trial free of constitutional error,” weighty “interests of comity and finality” have persuaded the Court that new rules governing criminal prosecutions should not be applied retroactively in cases that are already final. Teague, 489 U.S. at 308, 109 S.Ct. at 1074. These interests do not, however, apply to direct appeals from federal convictions. Comity, of course, is an issue only where a federal habeas court *1339 reviews a state conviction. And an interest in finality weighs in favor of addressing Levy’s claims now, for he will certainly raise them on collateral review if we do not.[6]
Griffith’s holding is therefore clear: retroactivity extends to all cases still pending on direct review. There is simply nothing in the opinion to suggest that a defendant must raise the issue in his initial appellate brief in order to receive the benefit of retroactivity. To the contrary, it consistently refers to all cases or all convictions not yet final. Griffith, 479 U.S. at 323, 324, 328, 107 S.Ct. at 713, 716. That the defendant in Griffith advanced the argument that ultimately resulted in the new rule is, of course, true, but the Court in no way emphasized this fact or made it a part of its holding. Therefore, while it is also true that the Griffith Court was concerned that “selective application of new rules violates the principle of treating similarly situated defendants the same,” any suggestion that Levy is dis-similarly situated simply because he failed to predict Blakely in his initial brief overlooks the next three sentences of the opinion, which refer to “cases pending on direct review,” “cases on direct review,” and “all convictions ... not yet final.” Id. at 323-24, 107 S.Ct. at 713. Griffith therefore requires us to consider Levy’s claim because Blakely was decided before his conviction became final.[7]
Levy may, of course, raise his Blakely claim on collateral review, either as a substantive Blakely claim or in the form of an ineffective assistance claim. If, however, we consider how such claims will be received, it becomes even clearer that Griffith requires us to consider them on direct review notwithstanding their omission from Levy’s initial brief. On one hand, it appears unlikely that in a 28 U.S.C. § 2255 proceeding Levy will be able to establish *1340 “cause” for Ms failure to raise a timely Blakely claim on direct review. See McCoy v. United States, 266 F.3d 1245, 1258-59 (11th Cir.2001) (holding that neither the novelty of, nor perceived futility of raising, an Apprendi claim constitutes “cause” for failure to raise the issue on direct review). And on the other hand, an ineffective assistance claim based on counsel’s failure to raise the Blakely issue in his initial brief also appears unlikely to succeed. See, e.g., Pitts v. Cook, 923 F.2d 1568, 1573-74 (11th Cir.1991) (holding that counsel’s failure to raise a Batson-type claim pre-Batson did not constitute ineffective assistance of counsel and that counsel’s failure to be “innovative” will rarely, if ever, support such a claim); Brown v. United States, 311 F.3d 875, 878 (8th Cir.2002) (holding that counsel’s failure to raise an Apprendi claim on direct appeal does not constitute ineffective assistance of counsel “simply because the court [previously held] that an Apprendi-type challenge was reasonably available” at the time of direct appeal).
We have previously concluded that such “a ‘gap’ between the spheres of novelty and ineffective assistance of counsel” is not problematic, but is merely a function of the scope of “cause” on the one hand and “ineffective assistance” on the other. See Pitts, 923 F.2d at 1573. But when the rule established in United States v. Ardley, 242 F.3d 989, reh’g en banc denied, 273 F.3d 991 (11th Cir.2001) and followed here is applied in a “gap” case, the upshot is that a new rule governing criminal prosecutions that should be retroactively applicable to all cases still pending on direct review becomes completely unavailable to a defendant such as Levy — whose appeal was pending when the rule was announced — in any form on either direct or collateral review. Thus, Levy’s Blakely claim will end up receiving the same treatment as that of a prisoner whose conviction was already final when Blakely was decided, thereby rendering the distinction Griffith and Teague draw between final and non-final convictions meaningless.
Moreover, the fact that Levy’s potential ineffective assistance claim is unlikely to succeed illustrates a further point: the Ardley-Levy rule effectively limits retroac-tivity in cases such as Levy’s to defendants whose counsel was “innovative” (Pitts, supra) — i.e., better than just “effective.” Yet the quality of a defendant’s lawyer is clearly irrelevant to Griffith’s rationale that “similarly situated defendants” should be treated “the same” and that “the integrity of judicial review requires that we apply that rule to all similar cases pending on direct review.” Griffith, 479 U.S. at 322-23, 107 S.Ct. at 713. Indeed, in cases such as this one, the Ardley-Levy rule effectively recreates the very clear break exception that the Griffith Court rejected — i.e., because counsel is unlikely to press claims that would require a clear break with precedent, Ardley-Levy will deprive the client of the benefit of retroactivity should that clear break subsequently occur.
In Ardley and again here, this court “has essentially superimposed an additional requirement onto retroactivity determinations. While the Supreme Court has clearly stated that all cases pending on direct appeal at the time of an intervening decision are entitled to the benefit of a new rule, the panel’s decision narrows the class of cases entitled to retroactivity.” Ardley, 273 F.3d at 999 (Tjoflat, J., dissenting from the denial of rehearing en banc). This continues to be the only circuit in which “cases are entitled to the benefit of an intervening decision only if: 1) the case was not yet final at the time of the intervening decision; and 2) the litigant presaged the intervening decision by raising the issue addressed by that decision in the litigant’s initial brief on appeal.” *1341 Id. Perhaps Ardley and Levy are only an attempt to limit the impact of the Supreme Court’s recent watershed sentencing decisions. See Douglas A. Berman, Do-overs?, Sentencing Law and Policy, Aug. 4, 2004, at http://sentencing.typepad.com/sentenc-ing_law_and_policy/2004/08/doovers.html (noting that “the potential number of sentencing ‘do-overs’ after Blakely is mind-boggling” and citing Levy as “evidence that lower courts are going to resist ‘do-overs’ however they can”). But when the Supreme Court decided Griffith, it was well aware that extending retroactivity to all cases pending on direct review would cause such disruption in the lower courts. In other words, the Court has already weighed the “reliance by law enforcement authorities on the old standards and effect on the administration of justice of a retroactive application of the new rule” against the equality and institutional concerns discussed above and determined retroactivity should extend “to all cases ... pending on direct review or not yet final.” Griffith, 479 U.S. at 324-25, 328, 107 S.Ct. at 714, 716 (emphasis added). As a court of appeals, we cannot now reevaluate such considerations on a case-by-case basis — Griffith made this decision for us.
II.
“A plain error that affects substantial rights may be considered even though it was not brought to the court’s attention.” Fed.R.Crim.P. 52(b). “If a legal rule was violated during the district court proceedings, and if the defendant did not waive the rule, then there has been an ‘error’ within the meaning of Rule 52(b) despite the absence of a timely objection.” Olano, 507 U.S. at 732-33, 113 S.Ct. at 1777 (emphasis added). The panel held that “Levy ... waived his Blakely-type claim by not raising it in his initial brief on appeal.” Levy, 379 F.3d at 1245 (emphasis added). Although the panel opinion suggests that this conclusion is straightforward and uncontroversial, it is not; in fact, a finding of “waiver” is critical to the issue presented by Levy’s petition for rehearing. This is because “[m]ere forfeiture, as opposed to waiver, does not extinguish an ‘error’ under Rule 52(b).” Olano, 507 U.S. at 733, 113 S.Ct. at 1777 (emphasis added).[8]
“Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the ‘intentional relinquishment or abandonment of a known right.’ ” Id. (quoting Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)). Here, Levy was unaware of a Sixth Amendment right to a jury trial on his federal sentencing enhancements until Blakely was decided. Indeed, Levy’s first *1342 brief was filed more than a year before the Court granted certiorari in Blakely,[9] and our decision in Sanchez specifically held that he had no such right, see 269 F.3d at 1262. As such, it simply makes no sense to say that Levy “waived” his Blakely claim, as no such “known right” existed when Levy filed his brief.[10] Unsurprisingly, none of the authorities the Olano Court cited to explain the critical distinction between waiver and forfeiture[11] articulates that distinction in a manner that supports classifying Levy’s unknowing omission as a waiver. Olano, 507 U.S. at 733, 113 S.Ct. at 1777.[12]
On this point, our court is undeniably in conflict with several other circuits. For example, in United States v. Rogers, 118 F.3d 466, 471 (6th Cir.1997), the Sixth Circuit rejected the Government’s argument that the defendant had “waived” a claim based on a then-recent Supreme Court decision by failing to object at trial or advance the claim in his initial brief. The court’s reasoning was simple: “[0]f course, [the defendant] could not have *1343 knowingly waived a constitutional right that evolved after he filed his appellate brief because raising the issue would have been futile in light of then-applicable precedent.” Id. Similarly, in a case in which “Apprendi was decided after briefing and one of the defendants referred] [the court] to the new decision in his post-argument brief,” the Fifth Circuit concluded that it was “not completely accurate to characterize the issue as waived or abandoned” and thus considered the claim under the plain error standard. United States v. Miranda, 248 F.3d 434, 444 (5th Cir.2001). And finally, in a recent case that was briefed and argued pr e-Blakely, the Seventh Circuit reasoned that “[g]iven the precedent in this circuit prior to Blakely, we think it would be unfair to characterize [the defendant] as having waived a challenge to the validity of her sentencing enhancement.” United States v. Pree, 384 F.3d 378, 396 (7th Cir.2004); accord United States v. Henningsen, 387 F.3d 585, 591 (7th Cir.2004). Indeed, the court raised the issue sua sponte and concluded that there had been no waiver notwithstanding the defendant’s failure to raise the Blakely issue in any sort of post-Blakely submission. Pree, 384 F.3d at 396-97.
In addition to these cases, it appears that every other circuit is willing to consider claims like Levy’s despite the ordinary rule that issues not briefed are deemed waived. See infra Part III. Although other circuits have not addressed the waiver/forfeiture distinction directly, the fact that these courts have considered the merits of such claims does seem to imply agreement with the reasoning of the Fifth, Sixth, and Seventh Circuits. Indeed, that such claims are cognizable under Rule 52(b) notwithstanding a defendant’s failure to include them in his initial brief may have been thought so obvious as to not merit discussion.
III.
The panel opinion in this case contends that “our practice” of refusing to consider claims like Levy’s is “longstanding.” Levy, 379 F.3d at 1244. This simply is not the case. While the panel does catalogue a litany of cases in which we refused to consider claims not raised in initial briefs, it cites no pre-Apprendi case in which we refused to consider a claim based on a new rule announced after a criminal defendant filed his first brief. In other words, while in the ordinary case it is our longstanding practice to consider only claims actually presented in initial briefs, our refusal to consider the merits of claims such as Levy’s is a recent phenomenon. Indeed, the practice dates back less than four years to Ardley.[13] Prior to Ardley, we *1344 addressed the merits of claims like Levy’s on several occasions. See, e.g., United States v. Candelario, 240 F.3d 1300, 1311 (11th Cir.2001) (“[Defendant] did not raise a constitutional objection on Apprendi grounds until he filed a petition for rehearing and suggestion for rehearing en banc.... We therefore may only review the claim for plain error.”); United States v. Calhoon, 97 F.3d 518, 529 (11th Cir.1996) (reviewing for plain error a claim based on the then-recent decision in United States v. Gaudin, 515 U.S. 506, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995), that was first raised in the defendant’s reply brief).
The panel dismisses these pre-Ardley cases because, among other things, they “do not mention, much less discuss, ... any of the binding, prior panel precedents, which preclude the raising of new issues in rehearing petitions and in supplemental and reply briefs” or “discuss or cite any authority for considering the merits of new issues not raised in an appellant’s initial brief.” Levy, 379 F.3d at 1245. As explained just above, however, the cases to which the panel refers were not in fact “binding, prior panel precedents” because they do not concern new rules for the conduct of criminal prosecutions made retroactively applicable by Griffith. Thus, because these cases were (and are) not on point, there was no reason for the panels in cases such as Candelario or Calhoon to have discussed them. Moreover, because the defendants in those cases had not “waived” Griffith retroactivity or plain error review under Rule 52(b), see supra Parts I — II, there was also no need for those panels to “cite any authority for considering the merits of’ their claims— indeed, because the defendants’ claims were not precluded, those panels would have needed to locate authority only if they had decided not to consider the claims.
*1345 In other circuits, the law is consistent with our own pre-Ardley cases — that is, courts consider claims like Levy’s as a matter of course. Indeed, in the aftermath of Blakely, such cases can be found on a near-daily basis. Following Appren-di, a number of courts faced this precise issue, and all (except for this court[14]) reached the merits of claims like Levy’s.[15] The same has been true post-Blakely.[16]
*1347 The clearest statements in these post-Blakely cases have come from the Seventh Circuit in United States v. Pree, see supra Part II, and from the Ninth Circuit in United States v. Ameline, 376 F.3d 967 (9th Cir.2004). In Ameline, even though the defendant “made no challenge to the applicable standard of proof or to the judge’s factfinding authority,” the Ninth Circuit held “that the Sixth Amendment implications of Blakely allow[ed] [the court] to examine sua sponte its potential impact on [the defendant’s] sentence.” Id. at 974. Thus, while the Seventh and Ninth Circuits have raised the Blakely issue sua sponte, we have refused to consider even claims raised in supplemental briefs filed shortly after Blakely was decided. And while Pree, Ameline, and the decisions of the Fifth and Sixth Circuits discussed in Part II, supra, are perhaps the clearest discussions of this issue, the cases cited in notes 15 and 16, supra, demonstrate that this court is truly a minority of one on this issue. Indeed, the eleven other federal circuits that have been presented with claims like Levy’s have all considered the *1348 merits of those claims.[17] I thus do not understand how this court can continue to reject the sound reasoning of our sister circuits without any sort of explanation or even an acknowledgment of those cases.
IV.
A final reason for rejecting the rule established in Ardley and followed here is that it sends a clear message to appellate counsel that they should brief any claim that passes the laugh test regardless of whether it has any support in, or is even squarely foreclosed by, our own precedent. Here, for example, by failing to raise a claim we had already flatly rejected, Levy’s counsel cost his client the benefit of the new rule announced in Blakely. Thus, in addition to being inconsistent with Griffith, Olano, and the law of every other circuit, the Ardley-Levy rule is also quite simply an imprudent exercise of the prudential rule that issues not briefed are deemed waived. See Miranda, 248 F.3d at 443 (“[T]he issues-not-briefed-are-waived rule is a prudential construct that requires the exercise of discretion.”).
When faced with a similar case in Johnson v. United States, the Supreme Court opted for a path that would avoid “counsel’s inevitably making a long and virtually useless laundry list of objections to rulings that were plainly supported by existing precedent.” 520 U.S. 461, 468, 117 S.Ct. 1544, 1549, 137 L.Ed.2d 718. In Johnson, as here, the defendant sought to raise a claim on appeal that was squarely foreclosed'by precedent at the time of trial (and thus was not raised then) but was viable by the time of appeal due to an intervening Supreme Court decision. The difference between Johnson and Levy’s case is that the intervening decision in Johnson was issued in time for the defendant to raise the claim in his first appellate brief, and the question before the Court was whether for Rule 52(b) purposes error must be “plain” as of the time of trial or only as of the time of appeal. The Court held that “where the law at the time of trial was settled and clearly contrary to the law at the time of appeal[,] it is enough that an error be ‘plain’ at the time of appellate consideration.” Id. The Court’s rationale was simple: it reasoned that if it interpreted Rule 52(b) to require that error be “plain” as of the time of trial, trial counsel would interpose numerous baseless objections to rulings that were clearly correct *1349 under prevailing law in order to avoid forfeiting the benefit of Griffith retroactivity for claims based on favorable intervening decisions. In Ardley and again here, however, this court has taken a position that encourages precisely such a “laundry list” of appellate arguments, thereby opting for needless waste of legal resources.
Because I find the parallel between Johnson and the instant case particularly compelling, I will try to state it as clearly as possible: “The narrowness of the plain error rule is a reflection of the importance, indeed necessity, of the contemporaneous objection rule to which it is an exception. The contemporaneous objection rule fosters finality of judgment and deters ‘sandbagging’ .... ” United States v. Pielago, 135 F.3d 703, 709 (11th Cir.1998). It “also promotes the salutary interest of making the trial the main event”; in short, it “is essential to the integrity and efficiency of our judicial process.” Id. Similarly, the purpose of the issues-not-briefed-are-waived rule — and Federal Rule of Appellate Procedure 28 in general[18]' — “is to conserve the time and energy of the court and clearly to advise the opposite party of the points he is obliged to meet.” Thys Co. v. Anglo Cal. Nat’l Bank, 219 F.2d 131, 133 (9th Cir.1955). Thus, both the contemporaneous objection rule and the issues-not-briefed-are-waived rule are intended to ensure the integrity of the adversary process and conserve legal resources. Johnson adopted a broader interpretation of the plain error exception in order to avoid useless objections that would inevitably undermine the very purposes the contemporaneous objection rule serves. Faced with the same problem, however, the panel opinion inflexibly applies the prudential issues-not-briefed-are-waived rule in a way that undermines the very purposes it serves.
Finally, I do not see how Ardley and Levy can be squared with our advice to counsel in United States v. Battle, 163 F.3d 1 (11th Cir.1998):
Even in a death-penalty case, the court expects counsel to be highly selective about the issues to be argued on appeal....
The Supreme Court of the United States has ... stressed ... that the best advocacy relies on selectivity. It is well settled that counsel need not “raise every ‘colorable’ claim” on appeal.... And, the former Chief Judge of this circuit, John C. Godbold, has given this advice: “[Cjounsel must select with dispassionate and detached mind the issues that common sense and experience tell him are likely to be dispositive. He must reject other issues or give them short treatment.”
Id. at 1-2 (citations omitted). Certainly, we cannot continue to give such advice after Ardley and Levy. Levy’s counsel heeded our advice — indeed, he did not have to resort to “common sense and experience” to determine that a Blakely-type claim was not likely to succeed because we had already specifically rejected that claim in Sanchez. But by holding that Griffith only applies if counsel anticipates the new rule and raises a similar claim in the defendant’s first brief, we are essentially telling counsel that they should “raise every *1350 colorable claim on appeal” and that if they are too “highly selective about the issues to be argued on appeal” they may do great injury to their clients. As a result, I would expect counsel to raise more claims on appeal, including claims squarely foreclosed by our own precedent, and that the arguments supporting those claims will necessarily be less clear and specific. Such kitchen-sink briefs will, of course, make this court’s work more difficult and waste judicial resources, not to mention counsel’s own time. Thus, even if the Ard-ley-Levy rule were not in conflict with Griffith, Olano, and the law of every other circuit, I would still dissent from the court’s refusal to rehear this case en banc simply because the rule will do great harm to the fair and efficient administration of justice in this circuit.
V.
To recap, I dissent from the denial of rehearing en banc for four primary reasons. First and foremost, the rule announced in Ardley and followed here unjustifiably limits the clear holding of Griffith v. Kentucky that “a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases ... pending on direct review or not yet final.” 479 U.S. at 328, 107 S.Ct. at 716 (emphasis added). Because there is no dispute that Levy’s case is still “pending on direct review” and is “not yet final,” Griffith’s constitutional rule necessarily trumps the strictly prudential rule that issues not briefed are deemed waived.
Second, the panel’s conclusion that Levy “waived” his Blakely claim is inconsistent with Olano’s distinction between “waiver” and “forfeiture.” “Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the ‘intentional relinquishment or abandonment of a known right.’ ” Olano, 507 U.S. at 733, 113 S.Ct. at 1777 (quoting Johnson, 304 U.S. at 464, 58 S.Ct. at 1023). This distinction is crucial, for “[m]ere forfeiture, as opposed to waiver, does not extinguish an ‘error’ under Rule 52(b),” id. (emphasis added), or, for that matter, justify limiting retroactivity under Griffith, see supra note 7. When Levy’s first brief was filed, the Supreme Court had not even granted certiorari in Blakely, and we had squarely rejected the very claim the panel now faults him for omitting. As such, there was no “known right” for Levy to have “intentionally relinquished,” and his omission is a clear example of a “forfeiture,” not a “waiver.”
Third, the panel’s opinion continues a circuit split that finds this court standing alone. Indeed, whereas we have been anxious to find untimely Blakely claims “waived,” see supra note 2, the Seventh and Ninth Circuits have, in well-reasoned opinions, raised Blakely issues sua sponte. Of course, inconsistency with other circuits does not by itself prove that we have adopted the incorrect view. But I do not understand how we, can continue to ignore the numerous cases considering claims such as Levy’s, particularly given that our disagreement with those cases is a relatively recent development and not a “longstanding practice.”
Finally, the position we have adopted will result in “counsel’s inevitably making a long and virtually useless laundry list” of appellate arguments that are plainly unsupported, or even foreclosed, by precedent. It also goes directly against our previous advice that we “expect[] counsel to be highly selective about the issues to be argued on appeal” and “that counsel need not raise every ‘colorable’ claim.” Battle, 163 F.3d at 1-2 (internal quotation marks omitted). As such, in addition to being inconsistent with Supreme Court precedent, Ardley and progeny are quite *1351 simply an imprudent exercise of a prudential rule.
For these reasons, I continue to disagree with the rule adopted in Ardley and followed here. I therefore dissent from the denial of rehearing en banc.

. Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct 2348, 147 L.Ed.2d 435 (2000), held that, ''[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.” Id. at 490, 120 S.Ct. at 2362-63.

. See also United States v. Njau, 386 F.3d 1039, 1041-42 (11th Cir.2004) (refusing to consider a Blakely claim first raised in a letter submitted pursuant to Federal Rule of Appellate Procedure 28(j)); United States v. Hembree, 381 F.3d 1109, 1110 (11th Cir.2004) (denying a motion to file a substitute or amended principal brief raising a Blakely claim); United States v. Curtis, 380 F.3d 1308, 1310-11 (11th Cir.2004) (denying a motion to file a supplemental brief raising a Blakely claim).

. United States v. Ardley, 242 F.3d 989, reh’g en banc denied, 273 F.3d 991 (11th Cir.2001), created this circuit split by refusing to consider an Apprendi claim in a case in which the Supreme Court GVR’d in light of Apprendi — • i.e., granted the petition for certiorari, vacated our initial judgment, and remanded for reconsideration in light of Apprendi. See 242 F.3d at 990 (concluding that nothing in the standard GVR requires a court of appeals to consider arguments not raised in a defendant’s initial brief on appeal). But see Stutson v. United States, 516 U.S. 193, 197, 116 S.Ct. 600, 603, 133 L.Ed.2d 571 (1996) ("[A] GVR order both promotes fairness and respects the dignity of the Court of Appeals by enabling it to consider potentially relevant decisions and arguments that were not previously before it.” (emphasis added)).

. Compare with United States v. Battle, 163 F.3d 1, 1-2 (11th Cir.1998) (citations omitted):
Even in a death-penalty case, the court expects counsel to be highly selective about the issues to be argued on appeal....
The Supreme Court of the United States has ... stressed ... that the best advocacy relies on selectivity. It is well settled that counsel need not "raise every 'colorable' claim” on appeal.

. See, e.g., Teague v. Lane, 489 U.S. 288, 310, 109 S.Ct. 1060, 1075, 103 L.Ed.2d 334 (1989) ("Unless they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced.”); Griffith, 479 U.S. at 328, 107 S.Ct. at 716 (holding "that a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases ... pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break’ with the past”); Johnson, 457 U.S. at 556 & n. 17, 102 S.Ct. at 2591 & n. 17 (holding that in Fourth Amendment cases "all nonfinal convictions” must be decided "under the same rule of law” and rejecting the alternative standards for retroac-tivity).

. Concurring in the denial of rehearing en banc in Ardley, Judge Carnes emphasized that our precedent foreclosed any Apprendi-based habeas claims the defendant, whose situation was much like Levy’s, might bring. See 273 F.3d at 993-94. But the fact that Levy is unlikely to succeed on collateral review does not mean that he cannot try, which means that a district court will in all likelihood have to address this claim and, ultimately, that we will as well, at least in the form of an application for a certificate of appealability.

. In Shea v. Louisiana, 470 U.S. 51, 58 n. 4, 105 S.Ct. 1065, 1069 n. 4, 84 L.Ed.2d 38 (1985), the Court discussed the retroactive application of Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), as follows:
As we hold, if a case was pending on direct review at the time Edwards was decided, the appellate court must give retroactive effect to Edwards, subject, of course, to established principles of waiver, harmless error, and the like. If it does not, then a court conducting collateral review of such a conviction should rectify the error and apply Edwards retroactively.
As in Griffith, retroactivity is phrased in mandatory terms: if a case is pending on direct review when a new rule is announced, appellate courts must give the decision retroactive effect. The Court does say that retroactivity is "subject ... to established principles of waiver.” But as is discussed in Part II, infra, the panel’s conclusion that "Levy ... waived his Blakely-type claim by not raising it in his initial brief on appeal,” Levy, 379 F.3d at 1245, is flatly inconsistent with Supreme Court precedent on the meaning of "waiver,” and therefore does not support limiting retro-activity or precluding review under Federal Rule of Criminal Procedure 52(b).
The Court also states here that if a new rule is not given retroactive effect on direct review, "then a court conducting collateral review ... should rectify the error and apply [it] retroactively.” Thus, because other circuits do not consider claims like Levy’s "waived,” if a state court outside this circuit did not apply Blakely retroactively in a direct appeal like this one, a federal habeas court would “rectify the error” and apply it retroactively on collateral review.

. Tellingly, Rule 52(b) refers to errors “not brought to the court's attention,” not errors not brought to the trial court's attention. This is because the rule was intended not only to allow appellate courts to correct errors not objected to at trial, but also to allow them to correct errors not raised on appeal. The 1944 advisory committee note thus describes the rule as a “restatement of existing law” and cites former Supreme Court Rule 27, which "provide[d] that errors not specified will be disregarded, 'save as the court, at its option, may notice a plain error not assigned or specified.’ ” The Supreme Court has also noted that Rule 52(b) “codified” the plain error “standard laid down in United States v. Atkinson, 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936).” United States v. Young, 470 U.S. 1, 6-7, 105 S.Ct. 1038, 1042, 84 L.Ed.2d 1 (1985). Atkinson held that, “[i]n exceptional circumstances, especially in criminal cases, appellate courts, in the public interest, may, of their own motion, notice errors to which no exception has been taken.” 297 U.S. at 160, 56 S.Ct. at 392. Thus, Rule 52(b) does not distinguish between trial-level and appellate-level forfeitures; rather, the crucial issue is whether the claim was waived or only forfeited. See Olano, 507 U.S. at 732-34, 113 S.Ct. at 1777.

. Levy's first brief was filed on May 21, 2002. The Supreme Court granted certiorari in Blakely on October 20, 2003. Blakely v. Washington, 540 U.S. 965, 124 S.Ct. 429, 157 L.Ed.2d 309 (2003).

. I realize that we regularly refer to issues not timely briefed as being "waived.” See, e.g., United States v. Veltmann, 6 F.3d 1483, 1493 (11th Cir.1993). In a typical criminal appeal — i.e., when a defendant’s claim is not based on a new rule announced by a decision that postdates his initial brief — this is the correct terminology. Thus, a defendant whose lawyer fails to raise a claim based on a case decided before the defendant’s brief is filed can be said to have "waived” the claim (and thus the right to have the decision retroactively applied in his case). Such a defendant would be relegated to bringing an ineffective assistance claim rather than one based directly on the intervening decision. But as explained in this Part and recognized by the other courts of appeals that have addressed the issue, cases such as Levy’s are different because a defendant cannot intentionally relinquish a right that has not yet evolved.

. See, e.g., Freytag v. Comm'r, 501 U.S. 868, 894 n. 2, 111 S.Ct. 2631, 2647 n. 2, 115 L.Ed.2d 764 (1991) (Scalia, J., concurring in part and concurring in judgment) ("Waiver, the intentional relinquishment or abandonment of a known right or privilege, is merely one means by which a forfeiture may occur. Some rights may be forfeited by means short of waiver, but others may not. A right that cannot be waived cannot be forfeited by other means (at least in the same proceeding), but the converse is not true. In this case, petitioners expressly consented to the Special Trial Judge’s role. As far as my analysis is concerned, however, it would not matter if an even more inadvertent forfeiture were involved — that is, if petitioners had not even consented but had merely failed to object in timely fashion.” (citations and quotation marks omitted)); Ralph S. Spritzer, Criminal Waiver, Procedural Default and the Burger Court, 126 U. Pa. L.Rev. 473, 475 (1978) (“[Fjirst, he who 'waives' must have a minimal degree of personal awareness (how much will depend on the context) of what is being relinquished; second, the relinquishment must be a matter of personal choice.”); Peter Westen, Away from Waiver: A Rationale for the Forfeiture of Constitutional Rights in Criminal Procedure, 75 Mich. L.Rev. 1214, 1214-15 (1977) ("The significant difference between waiver and forfeiture is that a defendant can forfeit his defenses without ever having made a deliberate, informed decision to relinquish them.... Unlike waiver, forfeiture occurs by operation of law without regard to the defendant's state of mind.”).

.Levy's Blakely claim asserts a violation of his Sixth Amendment right to a trial by jury on his federal sentencing enhancements. A valid waiver of tire right to a jury trial requires a defendant’s "express, intelligent consent” and must be "approved by the responsible judgment of the trial court.” Adams v. United States ex rel. McCann, 317 U.S. 269, 277, 63 S.Ct. 236, 241, 87 L.Ed. 268 (1942). Indeed, under Federal Rule of Criminal Procedure 23(a), "[i]f the defendant is entitled to a jury trial, the trial must be by jury unless: (1) the defendant waives a jury trial in writing; (2) the government consents; and (3) the court approves.”

. The only pre-Ardley case the panel cites that is even arguably on point is McGinnis v. Ingram Equipment Co., 918 F.2d 1491 (11th Cir. 1990) (en banc), in which we held that a civil defendant waived its right to argue that discriminatory demotion and discharge were not actionable under 42 U.S.C. § 1981 by failing to make the argument at trial or in its initial brief, even though the Supreme Court case that established this new rule was not decided until after the defendant's brief was filed. As we have recognized, however, "criminal cases [are] a realm which is wholly distinct (as far as retroactivity is concerned) from civil cases.” McKinney v. Pate, 20 F.3d 1550, 1566 (11th Cir.1994) (en banc). Therefore, while the issues-not-briefed-are-waived rule may limit retroactivity in civil cases, see James B. Beam Distilling Co. v. Georgia, 501 U.S. 529, 544, 111 S.Ct. 2439, 2448, 115 L.Ed.2d 481 (1991) (Souter, J.) (“[W]hen the Court has applied a rule of law to the litigants in one case it must do so with respect to all others not barred by procedural requirements or res judicata." (emphasis added)), the Court has never suggested as much in the criminal context.
Moreover, while Rule 52(b) provides an explicit exception to the contemporaneous objection rule in criminal cases, there is no similar exception that is directly applicable in *1344 civil cases. Therefore, although we have held that the rule applies by analogy so that in exceptional circumstances we may notice plain error in civil cases, see, e.g., S.E.C. v. Diversified Corporate Consulting Group,. 378 F.3d 1219, 1227 n. 14 (11th Cir.2004), we have also reasoned that its scope is significantly narrower in that context, see, e.g., id.; Maiz v. Virani, 253 F.3d 641, 676-77 (11th Cir.2001); Oxford Furniture Cos., v. Drexel Heritage Furnishings, Inc., 984 F.2d 1118, 1128 (11th Cir.1993); see also Danco, Inc. v. Wal-Mart Stores, Inc., 178 F.3d 8, 15 (1st Cir. 1999) (noting that the requirements of the plain error rule are applied “even more stringently” in civil cases); Fashauer v. New Jersey Transit Rail Operations, Inc., 57 F.3d 1269, 1289 (3d Cir.1995) ("If anything, the plain error power in the civil context — which is judicially rather than statutorily created— should be used even more sparingly.”). Additionally, it is not even clear that plain error review could have helped the defendant in McGinnis. Johnson v. United States, 520 U.S. 461, 117 S.Ct. 1544, 137 L.Ed.2d 718 (discussed in Part IV, infra), which clarified that "where the law at the time of trial was settled and clearly contrary to the law at the time of appeal[,] it is enough that an error be 'plain' at the time of appellate consideration,” id. at 468, 117 S.Ct. at 1549, was decided seven years after McGinnis. Thus, when McGinnis was decided, it was not clear that a litigant— in either a civil or a criminal case — in the position of the defendant in that case could ever benefit from a favorable intervening decision even if the court were to address the newly raised claim on the merits. See Olario, 507 U.S. at 734, 113 S.Ct. at 1777 ("We need not consider the special case where the error was unclear at the time of trial but becomes clear on appeal because the applicable law has been clarified.”); United States v. Vazquez, 53 F.3d 1216, 1222 n. 6 (11th Cir.1995) (noting a circuit split as to whether the error must be plain at trial and declining to answer that question). Indeed, because Johnson interpreted the Federal Rules of Criminal Procedure, it is still not clear that it applies in civil cases.
In short, McGinnis does not support Ardley or the result here because criminal and civil retroactivity are "wholly distinct” issues, and because plain error review is significantly narrower in civil cases and may not be available at all in a case like McGinnis.

. See supra note 3.

. United States v. Clinton, 256 F.3d 311, 313 (5th Cir.2001) (on remand from the Supreme Court, reviewing for plain error Apprendi claims not raised in the district court or in the defendant's initial appeal); United States v. Delgado, 256 F.3d 264, 280 (5th Cir.2001) (reviewing for plain error an Apprendi claim first made in a supplemental brief after the defendant failed to object at sentencing or raise the issue in his initial brief); United States v. Cernobyl, 255 F.3d 1215, 1216, 1218 (10th Cir.2001) (same); United States v. Miranda, 248 F.3d 434, 443-44 (5th Cir.2001) (same); United States v. Garcia, 242 F.3d 593, 599 & n. 5 (5th Cir.2001) (same); United States v. Terry, 240 F.3d 65, 72-73 (1st Cir.2001) (same); United States v. White, 238 F.3d 537, 541 (4th Cir.2001) (same); United States v. Mietus, 237 F.3d 866, 875 (7th Cir.2001) (same); United States v. Poulack, 236 F.3d 932, 935-37 (8th Cir.2001) (same); see also People v. Lathon, 317 Ill.App.3d 573, 251 Ill.Dec. 296, 740 N.E.2d 377, 380 (2000) ("The State argues that defendant has waived any challenge to the constitutionality of his sentence .... The defense [relies on Griffith v. Kentucky], Defendant's case was pending on direct review when Apprendi was decided. The Apprendi opinion was issued by the United States Supreme Court the same day the original order in this case was issued and therefore Apprendi was properly raised by defendant in the petition for rehearing.”). As I acknowledged in my dissent from the denial of rehearing en banc in Ardley, the First Circuit's position was not especially well-defined post-Apprendi. See Ardley, 273 F.3d at 1001 n. 13. In Teriy, supra, the court analyzed an Apprendi claim under the plain error standard even though the defendant had not raised the issue at trial or in his initial brief. But in United States v. Padro Burgos, 239 F.3d 72, 77 n. 3 (1st Cir.2001), the court denied the defendant's motion to raise an Apprendi claim in a supplemental brief "without prejudice to his right to raise Apprendi by way of an application for collateral relief in the event his direct appeal failed.” The First Circuit's post -Blakely pronouncements on this question, however, seem to clarify that a claim like Levy's is not waived simply because it is not raised in the defendant’s initial brief. See, e.g., United States v. Cordoza-Estrada, 385 F.3d 56, 59 (1st Cir.2004) ("Since Appellant's argument depends upon a decision that did not exist at the time of briefing, a [Rule 28(j) letter filed the day before oral argument] is a perfectly appropriate avenue by which to present it....”).

. See, e.g., United States v. Glenn, 389 F.3d 283, 287 (1st Cir.2004) (reviewing for plain error a Blakely claim first raised in a supplemental brief); United States v. Steams, 387 F.3d 104, 106-07 (1st Cir.2004) (reviewing for plain error a Blakely claim first raised in a post-oral argument letter); United States v. Satterfield, 114 Fed.Appx. 545, 2004 WL 2491574, at *1 (4th Cir. Nov.5, 2004) (unpublished op.) (reviewing for plain error a Blakely claim first raised in a supplemental brief); Henningsen, 387 F.3d at 591 ("Although [the defendant] did not raise the [Blakely] issue ... in his brief, he made notice of the Blakely and Booker decisions in a subsequent filing and raised the issue during argument. In light of the uncertainty surrounding this issue and the questionable constitutionality of [his] sentencing enhancement, we do not find that [he] has waived his [claim].”); United States v. Griffith, 385 F.3d 124, 127 (2d Cir.2004) (ordering that, notwithstanding the defendant's failure to raise a Blakely-type claim in his initial brief, "the mandate in this case will be held pending the Supreme Court's decision in Booker and Fanfan" and that "the parties will have until 14 days following the Supreme Court's decision to file supplemental petitions for rehearing”); United States v. Moore, 109 Fed.Appx. 503, 505 n. 2 (3d Cir.2004) (unpublished op.) (noting that a Blakely claim that was first raised in a supplemental brief would be reviewed for plain error but declining to grant the defendant’s motion to file such a brief because it was clear that he could not establish plain error); United States v. Cordo-za-Estrada, 385 F.3d 56, 59 (1st Cir.2004) (reviewing for plain error a Blalcely claim first raised in a Rule 28(j) letter sent to the court *1346 the day before oral argument and noting that "[s]ince Appellant’s argument depends upon a decision that did not exist at the time of briefing, a 28(j) letter is a perfectly appropriate avenue by which to present it”); Pree, 384 F.3d at 396-97 (raising a Blakely issue sua sponte); United States v. Pepsny, 108 Fed.Appx. 713, 716-17 (3d Cir.2004) (unpublished op.) (remanding for resentencing on non-Blakely grounds and stating that a defendant who first raised a Blakely claim in a post-argument filing could attempt to raise the Blakely issue on remand); United States v. Musleh, 106 Fed.Appx. 850, 857 n. 4 (4th Cir.2004) (unpublished op.) ("The Supreme Court issued its decision in [Blakely] shortly after we heard oral argument in this case. [Although the defendant had not raised a Blakely-type claim, we] then sua sponte ordered the parties to submit supplemental briefing respecting the effect oí Blakely on the Federal Sentencing Guidelines.”); United States v. Badilla, 383 F.3d 1137, 1142 n. 2 (10th Cir.2004) (reviewing for plain error a Blakely claim that was first raised in a motion for post-submission consideration); United States v. Westover, 107 Fed.Appx. 840, 847 (10th Cir.2004) (rejecting all claims raised in the defendant's brief but retaining jurisdiction and permitting a supplemental "brief to raise additional issues in light of Blakely,” which was "decided after initial briefing and argument”); United States v. Ameline, 376 F.3d 967, 974 (9th Cir.2004) ("Our precedent provides ample support for our authority to consider sua sponte a [Blakely] claim that was not initially raised on appeal.”).
In one unpublished decision, the Tenth Circuit refused to consider a Blakely claim raised in a letter submitted to the court pursuant to Federal Rule of Appellate Procedure 28(j), citing Levy. United States v. Rosales, 112 Fed.Appx. 685, 688 (10th Cir.2004). In other cases, that court has declined to consider Blakely claims raised in Rule 28(j) letters "because [the defendant] did not ask to file a brief raising a proper Blakely challenge.” United States v. Maldonado-Ramires, 384 F.3d 1228, 1230 n. 1 (10th Cir.2004); see, e.g., United States v. Horn, 113 Fed.Appx. 355, 356 (10th Cir.2004) (unpublished op.). While at first glance these cases might appear to conflict with the Tenth Circuit's decisions in Westover and Badilla, noted above, the more likely explanation is that the court was holding only that a Rule 28® letter is not a proper vehicle for raising a new argument — i.e., Rule 28® letters should be used only to identify new authority relating to arguments already raised' — and that the defendant waived his right to raise a Blakely claim by not properly seeking permission to file a supplemental brief. Indeed, in one case the court specifically cited Badilla for the proposition that plain error review would apply if the defendant had properly raised the issue in a brief. Maldonado-Ramires, 384 F.3d at 1230 n. 1. And in other cases, the court relied on United States v. Kimler, 335 F.3d 1132, 1138 n. 6 (10th Cir.2003), which states: "We will not address issues not raised in the appellant’s opening brief, especially where the arguments are based on authority that was readily available at the time of briefing.” See, e.g., Horn, 113 Fed.Appx. at 356. Moreover, as noted in note 15, supra, the Tenth Circuit considered Apprendi-based claims under similar circumstances. See Cemobyl, 255 F.3d at 1216, 1218 (reviewing for plain error an Apprendi claim first raised in a supplemental brief after the defendant failed to object at sentencing or raise the issue in his initial brief). Thus, taken together, these cases suggest that the Tenth Circuit will consider claims such as Levy’s as long as the defendant properly seeks to raise them in a supplemental brief.
Similarly, in an unpublished opinion, an Eighth Circuit panel without any explanation denied a motion to file a supplemental brief in light of Blakely. United States v. Castillo-Totrecilla, 111 Fed.Appx. 444, 445 (8th Cir. 2004). This decision, however, appears to conflict with that court’s administrative order regarding Blakely cases and recent published decisions, which suggest that the Eighth Circuit will hold the mandate in all Blakely cases and consider Blakely claims after Booker and Fanfan are decided. See, e.g., Administrative Order Regarding Blakely Cases (8th Cir. Sept. 27, 2004), at http://www.ca8.usc-ourts.gov/files/blakelyfinal.pdf; United States v. Babiar, 390 F.3d 598, 599 n. 2, 2004 WL 2694882, at *1 n. 2 (8th Cir. Nov.29, 2004); United States v. Pierce, 388 F.3d 1136, 1139 n. 2, 2004 WL 2520499, at n. 2 (8th Cir. Nov.9, 2004); see also United States v. Pirani, 2004 WL 1748930, 2004 U.S.App. LEXIS 16117, at *21-36 (8th Cir. Aug. 5, 2004) (reviewing for plain error a Blakely claim first raised after oral argument), op. vacated and reh’g en banc granted, 2004 U.S.App. LEXIS 17012 (8th Cir. Aug. 16, 2004); United States v. Poulack, 236 F.3d 932, 935-37 (8th Cir.2001) (reviewing for plain error an Apprendi claim first made in a supplemental brief after the defendant failed to object at sentencing or raise the issue in his initial brief). In another recent Eighth *1347 Circuit case, a defendant argued that he should be allowed to raise a Blakely claim for the first time in his reply brief because "(1) Blakely was decided 'shortly after the drafting of [his] appeal had begun,' and (2) 'the decision was unknown to ... counsel and was consequently left out of the brief.’ ” United States v. Ceballos, 116 Fed.Appx. 45, 48, 2004 WL 2676446, at *2 (8th Cir. Nov.23, 2004) (unpublished op.). The panel rejected this argument, stating that these were “inadequate justifications since [the defendant’s opening] brief was not filed until July 23, 2004 — almost a month after the Blakely decision was released.’’ Id. In accordance with the court’s administrative order, however, the panel stayed the mandate pending resolution of Booker and Fanfan; it explained that “in this unusual circumstance, [the defendant’s] mandate will be stayed despite his failure to raise this issue in his opening brief.” Id. at 48, 2004 WL 2676446 *2 n. 1. I take the panel's discussion of the issue to suggest that it would have considered the Blakely issue properly raised if the defendant’s opening brief had been filed before, rather than "almost a month after,” Blakely was decided.
So far as I can tell, state appellate courts are also considering the merits of claims like Levy's. See, e.g., State v. Miranda-Cabrera, 99 P.3d 35, 41 (Ariz.Ct.App.2004) (”[T]he State argues that [the defendant] waived any claim he might have to resentencing pursuant to ... Blakely by failing to raise it at the sentencing hearing or in his opening brief.... Decisions of the United States Supreme Court that create new rules apply to all criminal cases still pending on direct review. Griffith v. Kentucky. Because [the defendant’s] case is still pending on direct review, we will consider the application of the rule set forth in Blakely to the sentencing in his case.” (citations omitted)); People v. Barnes, 122 Cal.App.4th 858, 19 Cal.Rptr.3d 229, 243 (Ct.App.2004) (noting that United States v. Curtis, 380 F.3d 1308 (11th Cir.2004) "found a Blakely waiver based on the defendant's failure to raise the issue until supplemental briefing on appeal,” but concluding that the “rule applied in that case appears stricter than California's rule” and thus considering a Blakely claim first raised in a supplemental brief); People v. Wilson, 2004 WL 2677090, at *1 (Cal.Ct.App.) (unpublished op.) (considering a Blakely claim first raised in a petition for rehearing); Krebs v. State, 816 N.E.2d 469, 474-75 (Ind.Ct.App. 2004) ("[W]e evaluate sua sponte the constitutionality of [the defendant's] sentence under the United States Supreme Court's recent decision in Blakely v. Washington."); State v. Conger, 687 N.W.2d 639 (Minn.Ct.App.2004) (considering a Blakely claim first raised in a supplemental brief); State v. King, 372 N.J.Super. 227, 858 A.2d 4, 13-14 (2004) (same); State v. Murrin, 2004 WL 2677454, at *3-4 (Ohio Ct.App. Nov. 24, 2004) (considering Blakely issue sua sponte after the defendant challenged only the trial court's application of Ohio's sentencing guidelines); State v. Shaw, 2004 WL 2191044, at *8 (Tenn.Crim. App. Sept.28, 2004) (unpublished op.) (rejecting the State’s argument “that the defendant waived the [Blakely] issue by failing to raise it in his original brief”). But see People v. Abeyta, 2004 WL 2320090, at *4 (Cal.Ct.App. Oct. 15, 2004) (unpublished op.) (2-1 decision) (“[Defendant’s Blakely claim] was not asserted in the trial court. Therefore, all of defendant's Blakely based federal constitutional contentions have been forfeited.”)

. The cases discussed in Part II and cited in notes 15 and 16, supra, cover the First through Tenth Circuits. In addition, in United States v. Byers, 740 F.2d 1104 (D.C.Cir.1984), then-Judge Scalia wrote:
Neither at trial nor on appeal did appellant raise this Sixth Amendment claim. Appellant concedes that it was asserted for the first time (by new counsel) in his Petition for Rehearing and Suggestion for Rehearing En Banc. Appellees argue that we are therefore precluded from considering it. It is true as a general rule that appellate courts will not consider questions raised for the first time on appeal. However, we are "bound to consider any change, either in fact or in law, which has supervened since the judgment [from which appeal is taken] was entered,” Patterson v. Alabama, 294 U.S. 600, 607, 55 S.Ct. 575, 578, 79 L.Ed. 1082 (1935). We think that the Supreme Court’s decision in Estelle v. Smith, [451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981),] handed down during our consideration of [appellant's] Petition for Rehearing, which elevated [appellant's] Sixth Amendment claim from completely untenable to plausible, invokes this limited exception.
Id. at 1115 n. 11 (Scalia, J.) (citations omitted). Although Judge Scalia wrote for only six of twelve participating judges, Judge Ba-zelon's dissent, joined by Judges Wald and Mikva, agreed that the Sixth Amendment claim was properly before the court for the same reasons. See id. at 1161 n. 138. The D.C. Circuit's reasoning is particularly apt here given that Blakely similarly "elevated [Levy’s claim] from completely untenable,” see Sanchez, 269 F.3d at 1262, "to plausible.”

. See Levy, 379 F.3d at 1244:
To allow a new issue to be raised in a petition for rehearing, or a supplemental brief, or a reply brief circumvents Federal Rule of Appellate Procedure 28(a)(5), which requires than an appellant's initial brief must contain "a statement of the issues presented for review.” While some of our decisions refusing to consider new issues in reply, supplemental, or rehearing briefs have mentioned this rule or its predecessor, others have not.