[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 30, 2004
THOMAS K. KAHN
CLERK

_____

No. 04-10851
Non-Argument Calendar
_____

D. C. Docket No. 02-00721-CR-7-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOHN WARUIRU NJAU,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(September 30, 2004)**

Before CARNES, PRYOR and GODBOLD, Circuit Judges.

PER CURIAM:

The issue before us is whether the district court was clearly erroneous in

applying a three-level enhancement pursuant to Section 3B1.1(b) of the United States Sentencing Guidelines. The court found that John Waruiru Njau "was the supervisor of at least one person involved in the conspiracy and the criminal activity of which he was a part was extensive." We find no error.

Njau plead guilty and was sentenced to 27 months imprisonment and 3 years supervised release for his role in a Social Security fraud scheme. Njau's wife and brother-in-law were also indicted along with twenty-five other individuals. The ringleader of the scheme was Matar Fall who paid a Social Security employee, Celestine Huger, to fraudulently issue Social Security numbers to illegal aliens based on fraudulent immigration documents. Njau and others acted as middlemen between Fall and aliens seeking Social Security numbers to enable them to work in the United States. Fall provided forged immigration documents to these middlemen that contained immigration classifications and allowed them to utilize his relationship with Huger to obtain Social Security numbers.

Njau would negotiate a rate in excess of the fee he paid to Fall for the forged documents. Also he provided transportation to the Social Security office and instructed his customer to deal with Huger upon arrival. The aliens did not receive Social Security cards at the Social Security office. The cards were mailed to Njau and two other individuals he recruited to receive the cards and later distributed.

One individual, Michael Covington, received a fee of $20 per Social Security card mailed to his residence. The other, John Wamugi, Njau's brother-in-law, did not receive a monetary fee, but instead obtained a false Social Security number. Another individual, Peter Kamau, helped Njau by referring illegal aliens to him for Social Security numbers.

At Njau's sentencing the government argued for a three-level enhancement under § 3B1.1(b) because Njau had exercised a managerial or supervisory role in an offense that involved five or more participants or was otherwise extensive. Njau countered that there was no evidence that he recruited individuals as accomplices to his offense because the individuals alleged to have been supervised had no knowledge of the scheme. After oral argument on the enhancement the district court applied a three-level enhancement finding that Njau "was the supervisor of at least one person involved in the conspiracy and the criminal activity of which he was a part was extensive."

We review for clear error the district court's determination of Njau's role in the scheme and de novo its application of the guidelines to that role. United States v. Mesa, 247 F.3d 1165, 1168 (11th Cir. 2001).

Under § 3B1.1(b) of the guidelines the district court was authorized to apply a three-level enhancement to the Njau's base offense level if he was "a manager or supervisor . . . and the criminal activity involved five or more participants or was

3

otherwise extensive." U.S. Sentencing Guidelines Manual § 3B1.1(b). In determining the nature of Njau's role the district court could consider "the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." U.S.S.G. § 3B1.1 cmt. n.4.

Njau challenges only the district court's finding that he supervised at least one person in the scheme. We see no error in this finding. Njau enjoyed the lion-share of the profits and the discretion to set the prices paid by customers above the fee paid to Fall. He recruited both Covington and Wamugi to receive the cards so that he could distribute them to his customers and reduce the risk of detection. Without them Njau would have been forced to draw more attention to himself by directing all of the cards to his personal or business address. For these services both received benefits (either cash or a Social Security number) from Njau. Njau also utilized Kamau to obtain more customers. Together Covington, Wamugi, and Kamau were recruited by Njau to make the scheme more profitable.

We find unpersuasive Njau's argument that the individuals he supervised were not "participants" because of their passive role in the scheme. Under the guidelines a participant need only be "criminally responsible for the commission of

4

the offense." U.S.S.G. § 3B1.1, cmt. n. 1. The supporting role played by these individuals met this requirement and evidenced their knowledge of the scheme. Njau invokes a Third Circuit decision, United States v. Barrie, 267 F.3d 220 (3rd Cir. 2001) to suggest that like drug purchasers from a dealer, Wamugi, Covington and Kamau could not have been participants because a "SS card is no more a proceed of a Social Security fraud conspiracy than purchased drugs are proceeds of a distribution conspiracy." This analogy is inaccurate. Unlike a drug purchaser or an individual who simply receives a Social Security card as a proceed of a fraud scheme these three individuals assisted Njau in carrying out the fraud. Covington and Wamugi were not receiving Social Security cards by mail for their own use but to distribute to Njau's customers and help him evade detection. Similarly Kamau's referral of customers to Njau evidences his knowledge and participation in the fraud. The district court did not err in finding that at least one of these individuals was a participant in the fraudulent scheme and supervised by Njau.

Njau has submitted pursuant to Federal Rule of Appellate Procedure 28(j) the Supreme Court's decision in Blakely v. Washington, __ U.S. __, 124 S.Ct. 2531, 2538 (2004) where the Court applied the rule in Apprendi v. New Jersey, 530 U.S. 466, 490 (2000) to invalidate, on Sixth Amendment grounds, an upward departure from the "standard range" under Washington's Sentencing Reform Act on the basis of a finding by the trial judge. Njau's appeal however focuses

5

exclusively on whether the district court correctly found that Njau had a supervisory role in the commission of the fraud scheme. Njau did not argue in his initial appellate brief that this finding should have been made by a jury or exceeded the statutory maximum range. Moreover he has not identified arguments in his brief impacted by <u>Blakely</u> in accordance with Rule 28(j). Fed .R. App. P. 28(j). <u>Blakely</u> and its progeny therefore have no bearing on our decision here. <u>See</u> <u>United States v. Levy</u>, 379 F.3d 1241, 1243 (11th Cir. 2004) (refusing to consider <u>Blakely</u> issues not raised in initial appellate brief).

AFFIRMED.