[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 9, 2005
THOMAS K. KAHN
CLERK

_____

No. 04-11357
Non-Argument Calendar

_____

D. C. Docket No. 02-00469-CR-2-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee-
Cross-Appellant,

versus

D.C. WOODS,
a.k.a. Dionloyous Woods,

Defendant-Appellant-
Cross-Appellee.

_____

Appeals from the United States District Court
for the Northern District of Georgia

_____

**(May 9, 2005)**

Before EDMONDSON, Chief Judge, BLACK and PRYOR, Circuit Judges.

PER CURIAM:

Defendant-Appellant D.C. Woods appeals his 64-month sentence for conspiracy to defraud the United States, in violation of 18 U.S.C. § 371; and wire fraud, in violation of 18 U.S.C. §§ 2 and 1344, resulting from his participation in a mortgage-fraud scheme. Woods contends that the district court erred in (1) imposing a three-level upward enhancement, pursuant to U.S.S.G. 3B1.1(b), based on his role as a supervisor; and (2) determining his guideline sentence based on facts that neither were charged in his indictment nor found beyond a reasonable doubt, in the light of the Supreme Court's decision in Blakely v. Washington, 124 S.Ct. 2531 (2004). No reversible error has been shown; we affirm.

Woods's presentence investigation report ("PSI") recommended that his offenses be grouped together, pursuant to U.S.S.G. § 3D1.2(d), and that his base offense level be set at 6, pursuant to U.S.S.G. §§ 2B1.1(a)(2) (guideline for offenses involving fraud).[1] The PSI also recommended a 14-level increase because the offense involved approximately $494,095 in losses, pursuant to U.S.S.G. § 2B1.1(b)(1)(H) (guideline for loss amounts greater than $400,000); a 2-level increase because the offense involved fraudulent conduct during a bankruptcy proceeding, pursuant to

---

[1] To avoid ex post facto issues, the PSI used the 2001 edition of the United States Sentencing Guidelines in calculating Woods's guideline sentence.

2

U.S.S.G. § 2B1.1(b)(7)(B); a 2-level increase because the offense involved sophisticated means, pursuant to U.S.S.G. § 2B1.1(b)(8)(C); a 2-level increase because the offense involved the unauthorized transfer or use of any means of identification, pursuant to U.S.S.G. § 2B1.1(b)(9)(C)(i); and a 4-level upward adjustment based on his aggravated role in the offenses, pursuant to U.S.S.G. § 3B1.1(a).

Woods objected to all of the PSI's recommended guideline enhancements, but he did not argue that a jury—instead of the district court—should decide them. Woods also objected to the PSI's failure to recommend a downward adjustment for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1. On the recommended §3B1.1(a) enhancement, Woods specifically argued that (1) the offense did not involve at least five participants, and (2) the PSI did not contain specific allegations that he directed the activities of other participants in the fraud.

After conducting an evidentiary hearing on Woods's objections, the district court overruled them, except for (1) the § 2B1.1(b)(7)(B) increase for bankruptcy fraud; and (2) the § 3B1.1(a) adjustment for aggravating role, to the extent the court determined that only a three-level enhancement was warranted under U.S.S.G. § 3B1.1(b).[2] In determining this role adjustment, the court explained that "[w]e have at

_____

[2] The court also agreed to grant Woods a two-level § 3E1.1(a) adjustment for acceptance of responsibility after Woods agreed to withdraw a previously filed motion to withdraw his guilty plea.

least five people in the offense and he is certainly a supervisor.  But I will sustain the objection in part and award three points, not four points, for his role in the offense." With a resulting offense level of 25 and a criminal history category of I, Woods's guideline range was 57 to 71 months' imprisonment.  The court ultimately sentenced him to 64 months' imprisonment.

I.      Aggravating Role Adjustment

As discussed above, Woods argues on appeal that the district court erred in imposing a three-level § 3B1.1(b) adjustment for being a supervisor in the offense.  He contends that the record showed that only three persons were arguably participants in the fraud, and that the fraud was not "otherwise extensive."

We review for clear error the district court's determination of Woods's role in the scheme and de novo its application of the guidelines to that role.  See United States v. Njau, 386 F.3d 1039, 1041 (11th Cir. 2004).  A court is authorized to apply a three-level upward adjustment in a defendant's base offense level if he was "a manager or supervisor . . . and the criminal activity involved five or more participants or was otherwise extensive."  U.S.S.G. § 3B1.1(b).  A "participant" is a person "who is criminally responsible for the commission of the offense, but need not have been convicted."  U.S.S.G. § 3B1.1, comment. (n.1).

"The government bears the burden of proving by a preponderance of the evidence that the defendant had an aggravating role in the offense." United States v. Yeager, 331 F.3d 1216, 1226 (11th Cir. 2003). In determining the nature of the defendant's role, the court may consider "the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." U.S.S.G. § 3B1.1, comment. (n.4).

To the extent Woods is contending that only three persons were participants in the fraud or that the scheme was not, otherwise, extensive, Kimberly Patillo, Sharon Jenkins, and Craig Davis pled guilty to the instant offenses. Shawn Wilson, although not convicted of these offenses, verified to a lender that Patillo had an account with Northwestern Mutual while knowing that this information was untruthful. Milton Kevin Barbee similarly falsely verified that two "buyers" had various amounts on deposit with First Financial. And Melissa Skinner was "criminally responsible" because, in exchange for $3,000, she agreed to pose as another person and provided false identification documents at a real estate closing. Thus, the scheme involved at least five participants. See U.S.S.G. § 3B1.1, comment. (n.1).

5

To the extent Woods also is challenging whether he played a supervisory or managerial role, Davis testified at sentencing that, in exchange for $17,000, Woods recruited him to clean up real-estate properties, illegally turn on utilities, obtain false identification documents, and pose as another person at a real-estate closing. Additional testimony at sentencing showed that Woods also directed Wilson and Barbee to provide false financial information, which information Woods used to obtain more property. Because Woods both recruited and supervised these persons' activities in the scheme, the court did not clearly err in applying a § 3B1.1(b) role adjustment. See Njau, 386 F.3d at 1041.

II.    Blakely/Booker Error

Woods also asserts that the district court violated his Sixth Amendment rights under Blakely by determining his guideline sentence based on facts that neither were charged in his indictment nor proven to a jury. Because Woods failed to raise this constitutional claim in the district court, we review it only for plain error. See United States v. Rodriguez, 398 F.3d 1291, 1298 (11th Cir. 2005) (applying plain error review to Blakely claim that appellant failed to raise in the district court), petition for cert. filed, No. 04-1148 (Feb. 23, 2005). Under plain error review, an appellate court may not correct an error the defendant failed to raise in the district court unless there is "(1) error, (2) that is plain, and (3) that affects substantial rights." Id. (quotations and

6

internal marks omitted). "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. (quotations omitted).

The Supreme Court determined in Apprendi v. New Jersey, 120 S.Ct. 2348 (2000), that "[o]ther than the fact of a prior conviction, any fact that increases the penalty beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 2362-63. After the district court sentenced Woods, the Supreme Court concluded in Blakely that the imposition—based solely on the sentencing judge's factual findings—of a sentencing enhancement above the 53-month standard range indicated in the State of Washington's Sentencing Reform Act violated the defendant's Sixth Amendment rights because the facts supporting the findings neither were admitted by the defendant, nor found by a jury. Blakely, 124 S.Ct. at 2534-38. The Court in Blakely, however, expressly stated that "[t]he Federal Guidelines are not before us, and we express no opinion on them." Id. at 2538 n.9.

The Supreme Court in United States v. Booker, 125 S.Ct. 738 (2005), however, recently determined that "no distinction of constitutional significance [existed] between the Federal Sentencing Guidelines and the Washington procedures at issue [in Blakely]." Id. at 749. The Court, therefore, concluded that the mandatory nature

7

of the guidelines rendered them incompatible with the Sixth Amendment's guarantee to the right to a jury trial. Id. at 749-51. The Court also reaffirmed its rationale in Apprendi that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." Id. at 756.

In Rodriguez, we reviewed a similar appeal in which the appellant had failed to preserve a Blakely/Booker objection in the district court, and the Supreme Court had decided Booker while the appellant's sentence was pending on direct appeal. Applying plain error review, we determined that the appellant had satisfied the first element of plain error by showing error because, under a mandatory guideline system, the appellant's sentence had been enhanced based on judicially determined factual findings that went beyond the facts admitted by the defendant or found by the jury. Rodriguez, 398 F.3d at 1298.

We also determined in Rodriguez that the second element of plain-error review had been met. Id. At 1299. We explained that, although the Booker error had not been "plain" when the court had sentenced the appellant, "where the law at the time of trial was settled and clearly contrary to the law at the time of appeal—it is enough that the error be 'plain' at the time of appellate consideration." Id. (quotation omitted); see

8

also Booker, 125 S.Ct. at 769 (directing that decision was applicable to all cases on direct appeal).

But we concluded in Rodriguez that no plain error had occurred because, under the third element of plain error, the appellant had failed to show that the Booker error "affect[ed] substantial rights," that is, that the error "must have affected the outcome of the district court proceedings." Rodriguez, 398 F.3d at 1299, 1306. (quotation omitted). We discussed that the test for showing that the error "affected the outcome of the district court proceedings" was the formulation of a reasonable probability of a different result, which means a probability "sufficient to undermine confidence in the outcome." Id. at 1299 (quotation omitted). We also reiterated that, under this third element, "[i]t is the defendant rather than the [g]overnment who bears the burden of persuasion with respect to prejudice." Id. (quotation omitted).[3] Because we determined that the record in Rodriguez "provide[d] no reason to believe any result [was] more likely than not," we concluded that the appellant had not met his burden on the third element of plain-error review. Id. at 1301. And we concluded that we "ha[d] no occasion to decide how he would have fared under the fourth [element]." Id.

---

[3] We explained in further detail in Rodriguez that "pre-Booker defendants must establish a reasonable probability that if the district court had considered the guidelines range it arrived at using extra-verdict enhancements as merely advisory, instead of mandatory, and had taken into account any otherwise unconsidered [18 U.S.C. § 3553(a)] factors, the court would have imposed a lesser sentence than it did." See Rodriguez, 398 F.3d at 1302.

9

In the instant case, Woods, in pleading guilty, did not admit to facts on which the court relied in enhancing his guideline sentence under a mandatory guidelines system. We conclude that Booker error occurred and that it is now "plain." See Rodriguez, 398 F.3d at 1298-99.[4] But, similar to the facts in Rodriguez, Woods has not explained on appeal, much less proven under the third element of plain-error review, how his substantial rights were affected by the court's Booker error.

Indeed, district courts still must consider guideline ranges. See Booker, 125 S.Ct. at 764 ("Without the 'mandatory' provision, the [Sentencing Reform Act] nonetheless requires judges to take account of the Guidelines together with other sentencing goals"). Because the court heard extensive testimony on Woods's offense conduct, the court, at least implicitly, considered the nature and circumstances of the offense and Woods's character. See 18 U.S.C. § 3553(a)(1).[5] In imposing a sentence

---

[4] In determining that Booker error occurred in Rodriguez, we noted, without deciding, that an enhancement for obstruction of justice may not have been a Booker error "because the jury verdict convicting the appellant of the crimes he denied necessarily, albeit implicitly, found that he had engaged in behavior that fit[] within § 3C1.1." See Rodriguez, 398 F.3d at 1298 n.5. In the instant case, however, Woods contested during his plea colloquy and at sentencing the facts underlying his sentence enhancements.

[5] These other relevant factors in § 3553(a) include: "(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed–(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for . . . (A) the applicable category of offense committed by the applicable category of

of 64 months' imprisonment, a sentence in the middle of Woods's guideline range of 57 to 71 months' imprisonment, the court, at least implicitly, demonstrated that it considered the need for the sentence imposed, and that it would not have imposed a lesser sentence, but for the then mandatory nature of the guidelines. See 18 U.S.S.C. § 3553(a)(2)-(4). And the court ordered a restitution amount that reflected the loss sustained by the victims of the fraud. See 18 U.S.C. § 3553(a)(7).

Even in the absence of these determinations, the likelihood of a different result would be speculative without a clear statement or sign from the court that, but for the fact that its discretion was constrained under the federal guidelines, it would have imposed a lighter sentence. See Rodriguez, 398 F.3d at 1300-01. Woods has not cited to such evidence. At best, it is unclear whether the court would have imposed a different sentence. Woods, therefore, has not met his burden of showing a reasonable probability that his sentencing would have been different but for the Booker error, and we need not determine the fourth element of plain-error review. See id. at 1301.

---

defendant as set forth in the guidelines . . .; (5) any pertinent policy statement []; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense." See 18 U.S.C. § 3553(a)(1)-(7).

In sum, the district court erred under <u>Booker</u> and this error was "plain." We, however, conclude that we may not exercise our discretion to notice this forfeited error because Woods has failed to carry his burden of showing that this pre-<u>Booker</u> error affected his substantial rights. We, therefore, affirm Woods's 64-month sentence.

AFFIRMED.