[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPT 12, 2008
THOMAS K. KAHN
CLERK

No. 08-11126
Non-Argument Calendar

_____

D. C. Docket No. 07-00132-CR-ORL-22CJK

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CHAD EUGENE MASTERS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(September 12, 2008)**

Before BLACK, BARKETT and PRYOR, Circuit Judges.

PER CURIAM:

Chad Eugene Masters appeals his 15-month sentence, imposed after he pled guilty to one count of conspiracy to commit marriage fraud, establish a commercial enterprise to evade immigration laws, and make false statements on immigration documents, in violation of 18 U.S.C. § 371; one count of immigration fraud, in violation of 8 U.S.C. § 1325(d); and three counts of marriage fraud, in violation of 8 U.S.C. § 1325(c). On appeal, Masters contends the district court erred by enhancing his offense level by three levels under U.S.S.G. § 3B1.1(b) because he never managed, supervised, or exercised control over anyone involved in the conspiracy. Masters also claims U.S.S.G. § 2L2.1 is unconstitutional under the Equal Protection Clause because it treats United States citizens more harshly than aliens who commit the same offense, without justification. After a review of the record and the parties' briefs, we discern no reversible error.

## I. AGGRAVATING ROLE ENHANCEMENT

We review a district court's determination of a defendant's role in an offense for clear error. *United States v. Njau*, 386 F.3d 1039, 1041 (11th Cir. 2004). "[T]he ultimate determination of role in the offense is . . . a fundamentally factual determination entitled to due deference . . . ." *United States v. Rodriguez De Varon*, 175 F.3d 930, 938 (11th Cir. 1999) (en banc) (addressing a role reduction under U.S.S.G. § 3B1.2). "The government bears the burden of proving

by a preponderance of the evidence that the defendant had an aggravating role in the offense." *United States v. Yeager*, 331 F.3d 1216, 1226 (11th Cir. 2003). "The findings of fact of the sentencing court may be based on evidence heard during trial, facts admitted by a defendant's plea of guilty, undisputed statements in the presentence report, or evidence presented at the sentencing hearing." *United States v. Wilson*, 884 F.2d 1355, 1356 (11th Cir. 1989).

Section 3B1.1(b) of the Sentencing Guidelines provides, "If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels." The commentary elaborates, "To qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants." U.S.S.G. § 3B1.1, comment. (n.2). A "participant" is "a person who is criminally responsible for the commission of the offense, but need not have been convicted." U.S.S.G. § 3B1.1, comment. (n.1).

The district court did not clearly err in enhancing Masters' base offense level based on his role as a manager or supervisor under U.S.S.G. § 3B1.1(b). Masters does not dispute the fact that the fraudulent marriage conspiracy involved five or more participants, and the record supports the conclusion he managed or

3

supervised at least one participant. Masters concedes he recruited at least three individuals to join the conspiracy. He paid the individuals he brought into the conspiracy with money he received from Natalia Humm. Masters also drove participants to the courthouse, where they would obtain their marriage licenses, and back to Humm's office to get married. The record supports the finding that Masters informed those he recruited about the process of entering a fraudulent marriage and how to get paid for doing it, and Masters was paid for his recruitment activities. Because Masters recruited individuals into the conspiracy, described the process to them, paid them for their participation, helped facilitate their commission of the offense, and was paid for his role in the conspiracy, the district court could find he managed or supervised at least one participant in the conspiracy. Thus, the court did not clearly err in assessing a role enhancement pursuant to U.S.S.G. § 3B1.1(b).

## II. CONSTITUTIONALITY OF U.S.S.G. § 2L2.1

We review *de novo* a district court's determination that a provision of the Sentencing Guidelines is constitutional. *United States v. Pressley*, 345 F.3d 1205, 1209 (11th Cir. 2003).

Under § 2L2.1 of the Sentencing Guidelines, a United States citizen convicted of "Fraudulent Marriage to Assist Alien to Evade Immigration Law"

shall have a base offense level of 11.  U.S.S.G. § 2L2.1(a).  The base offense level

is to be decreased by three "[i]f the offense was committed other than for profit . . .

."  U.S.S.G. § 2L2.1(b)(1).  Section 2L2.2 of the Sentencing Guidelines provides

an alien convicted of "Fraudulent Marriage by Alien to Evade Immigration Law"

shall have a base offense level of 8.  U.S.S.G. § 2L2.2(a).

"[C]ongressional classifications based on alienage are subject to rational

basis review."  *United States v. Ferreira*, 275 F.3d 1020, 1025 (11th Cir. 2001)

(emphasis omitted).  "Congress can pass laws regulating the conduct of

non-citizens within the United States, and those laws do not violate equal

protection so long as they are rationally related to a legitimate government

interest."  *Id.*  We have applied the rational basis test to a challenge that a

provision of the Sentencing Guidelines violated the Equal Protection Clause when

it treated individuals differently based on their alienage.  *United States v. Adeleke*,

968 F.2d 1159, 1160-61 (11th Cir. 1992).

We apply a two-step process to determine whether the rational basis

standard is met:

> The first step in determining whether legislation survives
> rational-basis scrutiny is identifying a legitimate government purpose
> – a goal – which the enacting government body *could* have been
> pursuing.  The *actual* motivations of the enacting governmental body
> are entirely irrelevant . . . .  The second step of rational-basis scrutiny

5

asks whether a rational basis exists for the enacting governmental body to believe that the legislation would further the hypothesized purpose. The proper inquiry is concerned with the *existence* of a conceivably rational basis, not whether that basis was actually considered by the legislative body. As long as reasons for the legislative classification may have been considered to be true, and the relationship between the classification and the goal is not so attenuated as to render the distinction arbitrary or irrational, the legislation survives rational-basis scrutiny.

*Ferreira*, 275 F.3d at 1026 (quotation omitted) (emphasis in original). Under rational basis review, "a legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." *F.C.C. v. Beach Commc'ns, Inc.*, 113 S.Ct. 2096, 2102 (1993). "[T]hose attacking the rationality of the legislative classification have the burden to negative every conceivable basis which might support it." *Id.* (quotations and citation omitted).

Masters has not shown U.S.S.G. § 2L2.1 to be unconstitutional. Instead of negating every potential reason the Sentencing Commission could have had for treating United States citizens and aliens differently in §§ 2L2.1 and 2L2.2, Masters actually suggests a rational basis for the different treatment: the Commission could have concluded some United States citizens convicted of helping aliens evade immigration law by committing marriage fraud deserved harsher punishment than the aliens involved, since these citizens were seeking to

6

make money by "taking advantage of someone's desperation." Indeed, this hypothetical justification is supported by the Guidelines themselves: U.S.S.G. § 2L2.1(b)(1) provides for a three-level reduction if the citizen's "offense was committed other than for profit," which operates to equalize a citizen's offense level with that of an alien when the citizen lacks a profit motivation. Masters' hypothetical justification and the Guidelines themselves show the Sentencing Commission rationally could have concluded a United States citizen who engaged in immigration marriage fraud to make money was more culpable and deserving of greater punishment than an alien who was merely seeking to live and work in the United States. Thus, Masters has failed to meet his burden of showing U.S.S.G. § 2L2.1 is unconstitutional, since he has not demonstrated it lacks a rational basis.

**AFFIRMED.**