[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-10919
Non-Argument Calendar

_____

D.C. Docket No. 1:08-cr-20944-JAL-2

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

MARIA REMY MARY DUCUARA DE SAIZ,
JOSE ENRIQUE GUTIERREZ QUINTERO,
a.k.a. El Negro,
a.k.a. Quique,
a.k.a. Willy,

Defendants - Appellants.

_____

No. 12-12682
Non-Argument Calendar

_____

D.C. Docket No. 1:08-cr-20944-JAL-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

JOSE ENRIQUE GUTIERREZ QUINTERO,
a.k.a. El Negro,
a.k.a. Quique,
a.k.a. Willy,

Defendant - Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida
_____

(March 4, 2013)

Before TJOFLAT, PRYOR and KRAVITCH, Circuit Judges.

PER CURIAM:

Maria Remy Mary Ducuara De Saiz (Ducuara) and Jose Enrique Gutierrez Quintero (Quintero) were indicted for their roles in a conspiracy to smuggle heroin from Colombia. Ducuara pleaded guilty and appeals her 148-month sentence, arguing that the district court erred in applying a sentencing enhancement for her role as a manager or supervisor. Quintero was convicted after a jury trial and argues that the district court abused its discretion in denying his motion to exclude evidence under Federal Rules of Evidence 404(b) and 403 and that his conspiracy convictions violate the Double Jeopardy Clause. After careful review, we affirm.

I.

2

Ducuara pleaded guilty to conspiracy to import one kilogram or more of heroin in violation of 21 U.S.C. §§ 952(a), 960(b)(1)(A), and 963.  The district court found her total offense level under the Sentencing Guidelines was 36, including a three-level enhancement for her role as a manager or supervisor in the conspiracy under U.S.S.G. § 3B1.1(b), which yielded a guidelines range of 188 to 235 months' imprisonment.  Ducuara challenges her 148-month below-guidelines sentence, arguing the § 3B1.1(b) enhancement was not applicable.

After a jury trial, Quintero was convicted of one count of conspiracy to import heroin, in violation of 21 U.S.C. §§ 952(a), 960(b)(1)(A), and 963; two counts of importing heroin, in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 952(a) and 960(b)(1)(A); one count of conspiracy to possess heroin with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(i), and 846; and two counts of possession of heroin with intent to distribute, in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1) and (b)(1)(A)(i).

Quintero's conspiracy counts were based on conduct from around November 2006 to September 2007.  Before trial, Quintero argued that portions of the testimony of three witnesses — Andres Guillermo Pinzon Rincon (Pinzon), Wilson Armando Quintero Mendez (Mendez), and Lohana Melisa Maldonado Diaz (Diaz) — should be excluded under Rule 404(b) because they would discuss events that occurred before November 2006.  Regardless of the Rule 404(b) determination, he

3

argued that the testimony was more prejudicial than probative, and thus should be excluded under Rule 403.

Specifically, Mendez testified that he would acquire empty luggage in Colombia, transport it to a co-conspirator who would conceal heroin in the luggage, and then give the luggage to other conspirators who then boarded commercial flights to the United States. Mendez testified that he joined the conspiracy in 2004 or 2005 when he asked Quintero, his cousin, for work.

Diaz testified that she was recruited to be a courier. She testified that she met Ducuara in 1995 and went on trips with Ducuara's family in the late 1990s. On many of the trips, Diaz smuggled money or drugs in her luggage for Ducuara. Diaz testified that she began working for Quintero after meeting him in 2003, and during that meeting, Quintero told Diaz that he could ensure that Diaz would not be searched at the Colombian airport when she was smuggling heroin for him.

Pinzon testified that he would retrieve the drug-laden luggage from the couriers when they reached the United States and transport it to a co-conspirator in New York City, returning to Florida with money from the transaction. In 2005, Pinzon was recruited into the conspiracy by his brother-in-law and started transporting drugs in June 2005. At some point, Pinzon testified, he began to deal directly with Quintero over the phone.

The district court found that the testimony of Pinzon, Mendez, and Diaz was inextricably intertwined with events occurring during the period of the charged conspiracy and necessary to complete the story of the crime — and thus not subject to Rule 404(b) — and that the testimony should not be excluded under Rule 403.

## II.

Quintero appeals his convictions.  He raises three claims:  (1) that the admission of certain testimony violated Rule 404(b), (2) that the admission of certain testimony violated Rule 403, and (3) that his conspiracy convictions violate the Double Jeopardy Clause.

## A.

We review a district court's evidentiary rulings for an abuse of discretion. *United States v. Eckhardt*, 466 F.3d 938, 946 (11th Cir. 2006).  Rule 404(b) provides:  "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Fed. R. Evid. 404(b)(1).  But evidence is not extrinsic-act evidence, and thus is not subject to Rule 404(b), if it is "necessary to complete the story of the crime, or . . . inextricably intertwined with the evidence regarding the charged offense."  *United States v. McLean*, 138 F.3d 1398, 1403 (11th Cir. 1998) (internal quotation marks omitted).  "Evidence, not part of the crime charged but pertaining to the chain of events explaining the context, motive

5

and set-up of the crime, is properly admitted if linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury." *United States v. Williford*, 764 F.2d 1493, 1499 (11th Cir. 1985).

The district court did not abuse its discretion in admitting the testimony of Pinzon, Mendez, and Diaz concerning events that occurred before November 2006 because it was both inextricably intertwined with events occurring during the charged period and necessary to complete the story of the crime. The testimony at issue explained how the witnesses joined the conspiracy, how Mendez and Diaz first interacted with Quintero, and the conspiracy's structure and mechanics. This testimony demonstrated the bases for the witnesses' knowledge of Quintero and the conspiracy's operations, which was critical to establishing their credibility and necessary to complete their stories. *See McLean*, 138 F.3d at 1404.

Quintero also argues that the government's pre-trial notice of its intent to introduce 404(b) evidence was untimely. For the same reason the evidence was admissible, the notice requirement does not apply, namely because this evidence is intrinsic and thus not subject to Rule 404(b). *See United States v. Leavitt*, 878 F.2d 1329, 1339 (11th Cir. 1989). Thus, the district court did not err in admitting the challenged testimony of Pinzon, Mendez, and Diaz.

## B.

6

Quintero also argues the district court abused its discretion when it declined to exclude portions of the testimony of Pinzon, Mendez, and Diaz under Rule 403.[1] Rule 403 provides that relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. For the same reasons the testimony was inextricably intertwined with evidence of the charged offense, it is highly probative evidence.

Quintero's Rule 403 argument largely overlaps with his Rule 404(b) argument, specifically that the testimony discussed what Quintero claims were uncharged crimes. But most of the testimony he challenges simply describes integral parts of the conspiracy from which there could not have been any undue prejudice. The remaining testimony is probative of the mechanics of the conspiracy, and Quintero has not shown the risk of unfair prejudice from that testimony substantially outweighed its probative value in light of the scope of the drug conspiracy as a whole.

## C.

Finally, Quintero argues that his convictions violate the Double Jeopardy Clause because he was convicted of the same offense in Colombia. We disagree. We review a double jeopardy claim *de novo*. *United States v. Baptista-Rodriguez*, 17 F.3d 1354, 1360 (11th Cir. 1994). The Fifth Amendment to the United States

---

[1] We need not decide whether Quintero properly preserved his Rule 403 objection because we find there was no error, plain or otherwise.

Constitution "protects defendants against successive prosecutions for the same criminal offense." *Id.* But "identical offenses are nevertheless different for purposes of the Double Jeopardy Clause when they are charged by separate sovereigns." *Id.*

Quintero concedes that Colombia and the United States are separate sovereigns, but insists that the "sham prosecution" exception to the dual-sovereignty doctrine applies here. "To fit within the [sham prosecution] exception, the defendant must show that one sovereign was so dominated, controlled, or manipulated by the actions of the other that it did not act of its own volition." *Id.* at 1361.[2] Quintero argues that, because the United States introduced evidence at trial largely obtained from the Colombian government and because the Colombian and United States governments worked together in their investigation, this was a "sham prosecution." But that evidence was shared and the investigation jointly conducted does not imply that one sovereign was so "dominated, controlled, or manipulated" that it "did not act of its own volition." *See id.* Thus, Quintero's Colombian convictions fall under the dual-sovereignty doctrine, and his conspiracy convictions do not violate the Double Jeopardy Clause.

III.

---

[2] Although this court has not squarely decided the validity of the sham-prosecution exception, we need not reach that question because Quintero has not demonstrated a sham prosecution. *See Baptista-Rodriguez*, 17 F.3d at 1361.

8

Ducuara objected to the § 3B1.1(b) enhancement, but the district court overruled the objection, finding she was a manager or supervisor in the conspiracy because of her role in finding and recruiting couriers to transport drugs to the United States.

We review the district court's determination of the defendant's role in the offense, a factual finding, for clear error. *United States v. Ramirez*, 426 F.3d 1344, 1355 (11th Cir. 2005). The court may apply a three-level enhancement "[i]f the defendant was a manager or supervisor . . . and the criminal activity involved five or more participants . . . ." U.S.S.G. § 3B1.1(b). That the conspiracy involved more than five participants is undisputed.

> In determining the nature of [the defendant's] role the district court could consider "the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others."

*United States v. Njau*, 386 F.3d 1039, 1041 (11th Cir. 2004) (quoting U.S.S.G. § 3B1.1, cmt. (n.4)).

Ducuara did not dispute that she was "responsible for finding and preparing couriers to transport the heroin to the United States . . . ." Recruiting co-conspirators and arranging for the transportation of drugs support a § 3B1.1(b) enhancement. *See United States v. Perry*, 340 F.3d 1216, 1217 (11th Cir. 2003);

9

*Njau*, 386 F.3d at 1041.  Thus, the § 3B1.1(b) enhancement was proper "[e]ven though others may have had a larger role in the conspiracy . . . ."  *United States v. Ndiaye*, 434 F.3d 1270, 1304 (11th Cir. 2006).

IV.

For the foregoing reasons, we affirm Quintero's convictions and Ducuara's sentence.

**AFFIRMED.**

10