[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-12450
Non-Argument Calendar
_____

D.C. Docket No. 0:17-cr-60223-UU-7

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

PEDRO REYES,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 26, 2019)

Before TJOFLAT, JORDAN, and BRANCH, Circuit Judges.

PER CURIAM:

Pedro Reyes appeals his 108-month sentence imposed following his plea of guilty to conspiracy to commit money laundering.  We affirm.

**I**

**A**

Reyes was indicted for conspiracy to commit money laundering, 18 U.S.C. § 1956(h); conspiracy to commit bank fraud, 18 U.S.C. §§ 1344, 1349; money laundering, 18 U.S.C. § 1956(a)(1)(B)(i); and transactions in criminally derived property, 18 U.S.C. § 1957.  Reyes agreed to plead guilty to conspiracy to commit money laundering, and the government agreed to dismiss the other charges.

In a factual proffer executed concurrently to the plea agreement, Reyes stipulated to the following facts.  Roda Taher recruited Reyes to work as a "money mule."  As a mule, Reyes created two domestic shell corporations and opened a series of domestic bank accounts in the names of the shell corporations.  When Reyes received funds via wire transfer into these accounts, Taher would instruct him to wire those funds into various overseas accounts and to keep a percentage of the funds as a commission.

Within a few months, financial institutions began closing Reyes's shell corporations' accounts.  Taher and Reyes shifted gears, agreeing that Reyes would begin recruiting his own money mules to do the same work he had been doing.  Over the course of five years, Reyes recruited at least ten such mules.  Reyes's

2

mules would open various bank accounts in the names of their own shell corporations and transfer overseas any money they received.  Taher instructed Reyes, who would receive an approximately 3% commission on each transaction, and then Reyes would instruct his mules, who would receive an approximately 2% commission.

"In addition to having money mules open bank accounts in the United States, [Reyes] led a group of money mules, at [Taher's] behest, to Hong Kong to open further shell corporations and bank accounts there."  The Hong Kong shell corporations' bank accounts were designed to receive funds wired from accounts in the United States.

Reyes knew that the scheme's purpose was twofold: (1) to help others evade taxes and (2) to conceal the proceeds of frauds that others had committed.  Reyes specifically acknowledged that "[b]y having money sent from victims of fraud to bank accounts of shell corporations before further wiring those funds to accounts overseas," he was "able to conceal and disguise the nature, location, source, ownership, and control the proceeds of the frauds."  In total, Reyes's shell corporations' accounts and those of his mules "received at least approximately $7,000,000 in funds derived from fraud."

**B**

The presentence investigation report ("PSR") began with a base offense level of 26, pursuant to U.S.S.G. §§ 2S1.1(a)(2), 2B1.1(b)(1)(J),[1] as the value of the laundered funds was more than $3,500,000 but not more than $9,500,000. Because he was convicted under 18 U.S.C. § 1956, Reyes received a two-level enhancement under U.S.S.G. § 2S1.1(b)(2)(B). Reyes also received a two-level enhancement under U.S.S.G. § 2S1.1(b)(3) for sophisticated laundering. Finally, he received a three-level enhancement under U.S.S.G. § 3B1.1(b) for his role as a manager or supervisor (but not organizer or leader) in a criminal enterprise involving five or more participants. After a three-level reduction for acceptance of responsibility, Reyes's total offense level was 30.

The probation officer concluded Reyes had a total of four criminal history points and a criminal history category of III. The resulting Guideline range was 121 to 151 months' imprisonment, with a statutory maximum sentence of 20 years, 18 U.S.C. § 1956(a)(1)(B). The district court reduced Reyes's criminal history category to II, which in turn reduced his Guideline range to 108 to 135 months. It then found "a guideline sentence is appropriate. So that's what it's going to be." The court imposed a sentence of 108 months and ordered Reyes to pay $8,333,593.58 in restitution.

---

[1] We discuss below the details of the relevant Guideline provisions.

Prior to and at sentencing, Reyes made several arguments that the district court rejected.  He now presses those arguments, and a couple of new ones, on appeal.  In particular, he (1) challenges his three sentence enhancements; (2) contends the district court should have granted his request for a downward variance; and (3) argues the district court erred in certain factfinding.

## II

Reyes first challenges the three enhancements to his Guideline calculations. We review *de novo* "the district court's legal interpretations of the Sentencing Guidelines."  *United States v. Zaldivar*, 615 F.3d 1346, 1350 (11th Cir. 2010).  We review a district court's factual findings for clear error and its application of the Guidelines to those facts *de novo*.  *Id.*

## A

Reyes argues that the district court improperly enhanced his offense level under U.S.S.G. § 2S1.1(b)(2)(B).

Reyes pleaded guilty to conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h).  The Guideline calculation for an offense under 18 U.S.C. § 1956(h)[2] is found in U.S.S.G. § 2S1.1.  *See* U.S.S.G., app. A.  Section

---

[2] "Any person who conspires to commit any offense defined in this section [money laundering] or section 1957 [transactions in criminally derived property] shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy."  18 U.S.C. § 1956(h).

2S1.1(b)(2)(B) provides for a two-level increase "[i]f the defendant was convicted under 18 U.S.C. § 1956." But the Guideline commentary informs that this two-level increase "shall not apply if the defendant was convicted of a conspiracy under 18 U.S.C. § 1956(h) and the sole object of that conspiracy was to commit an offense set forth in 18 U.S.C. § 1957." U.S.S.G. § 2S1.1, cmt. n.3(C).[3]

Reyes says the sole object of his conspiracy was to violate § 1957. Reyes is incorrect. Per the indictment, the conspiracy had multiple objects, some of which violated § 1956 and some of which violated § 1957. Moreover, Reyes admitted in the factual proffer that he violated § 1956. Section 1956 prohibits an individual who knows "that the property involved in a financial transaction represents the proceeds of some form of unlawful activity" from conducting or attempting to conduct a financial transaction involving those proceeds "designed in whole or in part . . . to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds." 18 U.S.C. § 1956(a)(1)(B)(i). This language from § 1956 appears almost verbatim in Reyes's factual proffer and describes exactly what he admitted he did: knowingly engaged in financial transactions to conceal the proceeds of unlawful activity.

---

[3] The "commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Stinson v. United States*, 508 U.S. 36, 38 (1993).

Reyes also seems to suggest that a § 1956 violation requires him to have participated in the underlying unlawful activity—here, various forms of fraud. The plain language of the statute refutes that suggestion. *See* 18 U.S.C. § 1956(c)(1) ("As used in this section[,] the term 'knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity' means that the person knew the property involved in the transaction represented proceeds from some form, though not necessarily which form, of activity that constitutes a felony . . . .").

The district court did not err in applying the § 2S1.1(b)(2)(B) enhancement.

**B**

Reyes next contests the two-level enhancement for sophisticated money laundering under U.S.S.G. § 2S1.1(b)(3).

Section 2S1.1(b)(3) provides for a two-level increase if the money laundering enhancement under subsection (b)(2)(B) applies (as it did here) and the offense involved "sophisticated laundering." Sophisticated laundering, Application Note 5(A) explains, "means complex or intricate offense conduct pertaining to the execution or concealment of the 18 U.S.C. § 1956 offense" and

> typically involves the use of—
> (i) fictitious entities;
> (ii) shell corporations;
> (iii) two or more levels (*i.e.*, layering) of transactions, transportation, transfers, or transmissions, involving criminally derived funds that were intended to appear legitimate; or

7

(iv) offshore financial accounts.

Under Application Note 5(A), Reyes was clearly eligible for the enhancement. The conspiracy here involved fictitious entities and shell corporations that existed only to launder money. The participants "layered" funds through various entities and to offshore accounts. As noted, Reyes specifically acknowledged that "[b]y having money sent from victims of fraud to bank accounts of shell corporations before further wiring those funds to accounts overseas," he was "able to conceal and disguise the nature, location, source, ownership, and control the proceeds of the frauds." In short, the stipulated facts establish that Reyes's laundering was sophisticated.

Reyes points to Application Note 5(B), which instructs that the sophisticated-laundering enhancement does not apply if "the conduct that forms the basis for an enhancement under the guideline applicable to the underlying offense is the only conduct that forms the basis for" the sophisticated-laundering enhancement. Reyes appears to argue that because he was not involved in the underlying offense (fraud), he should not have received the sophisticated-laundering enhancement. Reyes misreads Application Note 5(B). The note is designed to prevent a defendant from receiving the same enhancement both for the underlying offense and for the sophisticated laundering. Here, Reyes did not

8

participate in, and was not sentenced for, the underlying offense.  The note's unwarranted-double-enhancement concern is accordingly not present.

The district court did not err in applying the § 2S1.1(b)(3) enhancement.

## C

Reyes next argues that the district court improperly applied a three-level role enhancement under U.S.S.G. § 3B1.1(b).

Section 3B1.1(b) provides a three-level increase "[i]f the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive."  The commentary to § 3B1.1 provides:

> In distinguishing a leadership and organizational role from one of mere management or supervision, titles such as "kingpin" or "boss" are not controlling.  Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

*See* U.S.S.G. § 3B1.1, cmt. n.4.  Although the commentary speaks in terms of distinguishing *leadership* roles from "mere management" or supervisory roles, we have approved of using the same factors to evaluate whether a defendant occupied a managerial or supervisory role.  *See United States v. Njau*, 386 F.3d 1039, 1041 (11th Cir. 2004).

9

The district court did not clearly err in finding Reyes was a manager or supervisor. Reyes's characterization of his role as a mere "recruiter" is at odds with the record. Reyes recruited at least ten money mules, instructed them on the conspiracy's method of laundering money, and organized a trip to Hong Kong to open bank accounts in the names of shell corporations. Reyes earned a higher commission compared to his mules, claiming a "right to a larger share of the fruits of the crime." *See* U.S.S.G. § 3B1.1, cmt. n.4. He recruited new mules into the conspiracy for over four years—a task that was necessary to perpetuate the conspiracy as financial institutions continually froze or closed suspicious accounts. His leadership role is clear. That Reyes entered the conspiracy initially as a mule does not militate against the managerial enhancement in light of his eventual role. We decline to hold that ambitious, upwardly mobile participants are to be treated as less dangerous or less criminally responsible because they entered a conspiracy at its lowest level.

The district court did not err in applying the § 3B1.1(b) enhancement.

## III

Reyes next argues that the district court erred in denying his request for a downward variance. He says his sentence was greater than necessary to comply with the purposes of sentencing listed in 18 U.S.C. § 3553(a).[4]

We review the substantive reasonableness of a sentence for abuse of discretion. *United States v. Livesay*, 587 F.3d 1274, 1278 (11th Cir. 2009).

"The party challenging a sentence has the burden of showing that the sentence is unreasonable in light of the entire record, the § 3553(a) factors, and the substantial deference afforded sentencing courts." *United States v. Rosales-Bruno*, 789 F.3d 1249, 1256 (11th Cir. 2015). "A district court abuses its discretion when it (1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (en banc) (quoting *United States v. Campa*, 459 F.3d 1121, 1174 (11th Cir. 2006) (en banc)). "The weight to be accorded any given § 3553(a) factor is a matter committed to the sound discretion of the district court." *United States v. Clay*, 483 F.3d 739, 743 (11th Cir.

---

[4] "The district court must impose a sentence 'sufficient, but not greater than necessary to comply with the purposes' listed in § 3553(a), including the need to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, deter criminal conduct, and protect the public from the defendant's future criminal conduct." *United States v. Victor*, 719 F.3d 1288, 1291 (11th Cir. 2013) (quoting 18 U.S.C. § 3553(a)).

2007) (quoting *United States v. Williams*, 456 F.3d 1353, 1363 (11th Cir. 2006)). A sentence imposed well below the statutory maximum is an indicator of reasonableness, *see United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008), and we ordinarily expect a sentence within the Guideline range to be reasonable, *see United States v. Victor*, 719 F.3d 1288, 1291 (11th Cir. 2013).

Reyes has failed to demonstrate that his sentence is substantively unreasonable. Reyes's main argument is essentially that the district court could have imposed a lower sentence or could have weighed the sentencing factors, including his personal circumstances, in a manner more favorable to him. That argument fails in light of our deferential standard of review. The district court confirmed that it "considered the statements of the parties, the presentence report containing the advisory guidelines and the statutory factors." It then said it would "impose a sentence at the low end of the guidelines because [it] believe[d] that [was] sufficient but not greater than necessary to address the criminal conduct in this case." In so concluding, the court agreed that Reyes had shown, as he stresses on appeal, that he is a "great father." But that fact, the court found, was not enough to offset the nature and circumstances of the offense, along with the fact that Reyes "so embraced the scheme and engaged in . . . extraordinary conduct by organizing [the] trip to Hong Kong." Nothing indicates the district court considered any irrelevant or improper factor or committed a clear error of

judgment.  Moreover, Reyes's 108-month sentence was at the low end of the Guideline range (108 to 135 months) and was well below the statutory maximum (20 years).  *See Victor*, 719 F.3d at 1291; *Gonzalez*, 550 F.3d at 1324.

Reyes also points to the sentences co-conspirators received from a different district judge.  Because those individuals received lesser sentences, Reyes contends there is an unwarranted sentencing disparity.  *See* 18 U.S.C. § 3553(a)(6).  The district court, made aware of these other sentences, rejected the notion that the disparity was unwarranted, as Reyes was involved in the scheme for a longer period of time, recruited more mules, and organized the trip to Hong Kong. Further, we stress that discretion implies a range of choices.  "[U]nder the abuse of discretion standard of review there will be occasions in which we affirm the district court even though we would have gone the other way had it been our call.  That is how an abuse of discretion standard differs from a *de novo* standard of review." *Irey*, 612 F.3d at 1189 (quoting *United States v. Frazier*, 387 F.3d 1244, 1259 (11th Cir. 2004) (en banc)).

The district court did not abuse its discretion in denying Reyes's request for a downward variance.

13

## IV

Finally, Reyes argues for the first time on appeal that the district court made two other errors: (1) it failed to identify the scope of his jointly undertaken criminal activity in the conspiracy, and (2) it failed to hear testimony from the fraud victims when calculating the restitution amount. Reyes did not object on these grounds before the district court.

When a party fails to make specific objections at sentencing, we review the argument on appeal for plain error. *United States v. Ramirez-Flores*, 743 F.3d 816, 821 (11th Cir. 2014). To establish plain error, the appellant must show that "(1) an error occurred; (2) the error was plain; (3) it affected his substantial rights; and (4) it seriously affected the fairness of the judicial proceedings." *Id.* at 822.

Both of Reyes's new arguments fail to meet this standard. First, Reyes says the district court "was bound to examine the evidence in order to ensure any stipulation [was] reliable." He appears to insinuate that he may not have participated in the conspiracy as actively as he admitted he did. But Reyes does not even try to identify *anything* to which he stipulated that was unreliable. We decline to remand so the district court can assure us it thoroughly examined the record when it is already apparent that the court did just that.

Second, Reyes contends that the district court should have heard evidence from victims of the fraud to ensure the restitution amount was accurate. He says

14

"the amount of the loss was impossible for him to have foreseen" when he pleaded guilty, suggesting he could not know the actual amount. Yet when Reyes executed his factual proffer, he stipulated that his shell corporations' accounts and those of his mules "received at least approximately $7,000,000 in funds derived from fraud." Reyes, laundering money and collecting commissions, knew how much money had gone through his shell corporations' accounts and those of his mules. Nor was Reyes assigned more than his share of the approximately $94,000,000 laundered by the conspiracy in total. The district court was not obligated to hold, *sua sponte*, a hearing at which the victims of the underlying fraud would be compelled to testify. To the extent Reyes suggests he was held accountable in any way for objects of the conspiracy that were unforeseeable to him, we reject that suggestion as unsupported and undeveloped.

V

Reyes's sentence is **AFFIRMED.**